**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED:  7/2/2024                │
└─────────────────────────────────────┘
```

---

JACK PIUGGI,

　　　　　　　Plaintiff,

　　- against -

GOOD FOR YOU PRODUCTIONS LLC, GRAND STREET MEDIA INC., WARNER BROS. DISCOVERY INC., HOME BOX OFFICE INC., and DOES 1-25,

　　　　　　　Defendants.

---

**23 Civ. 3665 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiff Jack Piuggi brings this action against defendants Grand Street Media Inc. ("Grand Street"), Home Box Office Inc. ("HBO") and Warner Bros. Discovery Inc. ("Warner") (together, "WBD"), and Good for You Productions LLC ("GFY") (collectively, "Defendants"). Piuggi alleges that Defendants conspired together to steal his ideas for a reality television show called *Instafamous* and appropriated those ideas for two "similarly themed" TV shows called *Fake Famous* and *FBOY Island* that HBO released in 2021. Piuggi brings claims for copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Defendants move to dismiss these claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, Defendants' motions to dismiss are **GRANTED**.

## I.   <u>BACKGROUND</u>

**A.   <u>Factual Background</u>**[1]

On January 2, 2021, Piuggi conceived the idea for *Instafamous*: "a documentary-style TV show incorporating an underlying faux-dating show competition" that would "expose the superficiality of Instagram[ and] 2020s dating culture, while simultaneously causing the contestants" to "reveal their true and selfish nature." ("Complaint" or "Compl.," Dkt. No. 1, ¶¶ 23-24.) But Piuggi knew that if he wanted to turn his idea into a reality, he would need to partner with a media production company. So Piuggi reached out to Grand Street, a media production company owned and operated by Lowell Freedman ("Lowell") and Lowell's partner Jesse Guma ("Guma"). Piuggi knew of Grand Street through Lowell's brother, Maurice Freedman ("Maurice"), whom Piuggi met in 2018 through his "lifelong family friend" and "mentor" Mark Rooney ("Rooney"). (<u>Id.</u> ¶ 25.) After Grand Street and Piuggi signed a non-disclosure agreement ("NDA"), Piuggi pitched Lowell and Guma the synopsis for *Instafamous* during a 22-minute phone call. Piuggi followed up this call by emailing

---

[1] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II.

Lowell "40-pages of documentation" (the "Treatment") outlining his concept in greater detail. (Id. ¶ 26.)

Grand Street informed Piuggi on January 14, 2021, that it was passing on the project but referred him to GFY, another media production company. After GFY and Piuggi signed an NDA on January 19, 2021, Piuggi pitched the concept for *Instafamous* during a video conference with GFY executive Jeff Cobelli ("Cobelli"), who expressed enthusiasm for the project. Two days later, HBO released the trailer for *Fake Famous*, a "documentary film" (id. ¶ 2) and "reality TV program[]" (id. ¶ 104) that Piuggi alleges bears a "striking similarity" to Instafamous (id. ¶ 52). Initially unaware of the *Fake Famous* trailer, Piuggi continued to share his ideas for *Instafamous* with GFY. Indeed, the same day the trailer was released, Piuggi had a call with the full GFY team, where he again pitched his concept for *Instafamous*. Later that day, Piuggi spoke with attorneys Rebel Roy Steiner Jr. ("Steiner") and Bennett Fidlow ("Fidlow") of Loeb & Loeb LLC ("Loeb & Loeb"), who represented his production company Flipp Productions, LLC. Piuggi recalls that Steiner, who simultaneously represented HBO, cautioned him several times to be wary of the production companies with whom he was working. According to Piuggi, Steiner "specifically" stated that he did not trust the production company Piuggi had hired

— which Piuggi interpreted as referring to Grand Street — and warned "they are not who they say they are. . . . They are HBO, and they are ripping you off." (<u>Id.</u> ¶ 35.) Steiner advised Piuggi to cease all development on *Instafamous* until he had a contract in place with GFY.[2]

Undeterred, Piuggi continued collaborating with GFY to develop *Instafamous*. On February 1, 2021, Piuggi paid GFY $2,500 as a "50% good faith deposit for the first phase" of development for *Instafamous*, with himself as executive producer. (<u>Id.</u> ¶ 39.) Piuggi claims that deposit represented an "implied contract with GFY," although he does not specify the terms of that implied contract. (<u>Id.</u> ¶ 41.) The next day, HBO aired the full version of *Fake Famous*. Piuggi first learned of *Fake Famous* two days later, when GFY informed him of the program's release during a two-hour call with Cobelli and the rest of his team on February 3, 2021. On another call with GFY on February 5, 2021, Puiggi proposed casting his friend Garrett Morosky ("Morosky") on Instafamous. Hours later, however, Piuggi learned that Morosky had been cast in HBO's upcoming "documentary style reality show" *FBOY Island*. (<u>Id.</u> ¶ 46-47.) That news spurred Piuggi to watch the trailer for *Fake Famous*, and he immediately noticed what he believed

---

[2] Following this call, Piuggi chose to retain another lawyer for his project. Piuggi claims his new attorney advised him to record his communications concerning *Instafamous* going forward.

to be striking similarities between that show and his. Convinced that "his concepts were being fed to HBO," (id. ¶ 48), Piuggi confronted Grand Street and his former attorneys Steiner and Fidlow about those similarities, but each denied having any connection to *Fake Famous*. Steiner, in particular, dismissed the idea that HBO had time to steal his ideas and to film, edit, and release a documentary in such a short period of time.

Though Piuggi continued working with GFY over the next two months, his concerns mounted. In March 2021, Morosky twice called Piuggi from the set of *FBOY Island* in March 2021, during which he referred to *FBOY Island* as "your TV show" (id. ¶ 65) and described the show's elements — which Piuggi maintains were pulled "word-for-word" from his original concept for *Instafamous* (id. ¶ 68).[3] Moreover, Piuggi claims that during a recorded call on March 26, 2021, Cobelli admitted that he had shared information about *Instafamous* (in breach of the NDA) with a man named Chris Lewick ("Lewick"), whom Piuggi identified as a camera operator for the show *American Chopper*. On April 8, 2021, Piuggi confronted Cobelli about perceived similarities between a scene in one of HBO's

---

[3] Piuggi also remembers Morosky stating during a call in September 2021 that "they stole your show." (Compl. ¶ 71.)

shows and an idea he had proposed for *Instafamous*.[4] According to Piuggi, Cobelli responded that he was aware of his obligations under the NDA and that if GFY had in fact stolen the concept, Piuggi would have the right to sue them. Roughly one week later, GFY dropped Piuggi as a client. Piuggi claims that when he contacted Loeb & Loeb on May 19, 2021, to settle his bill, the firm denied it had done any work on his behalf — including denying that certain calls between them had ever occurred and asserting that the retainer no longer existed.

Piuggi eventually secured a certificate of copyright registration ("registration certificate" or "Certificate") for *Instafamous* from the U.S. Copyright Office, effective December 13, 2022. Notably, the Complaint is silent as to what materials Piuggi submitted in support of his registration application.

**B.**   **Procedural Background**

On May 2, 2023, Piuggi filed this action against Defendants, bringing four claims: (1) federal copyright infringement, against all Defendants (Count I); (2) breach of contract, against Grand Street and GFY (Count II); (3) breach of the implied covenant of good faith and fair dealing

---

[4] The Complaint does not identify which of HBO's two shows this allegation concerned, and the only similarity Piuggi identifies is that the allegedly infringing scene was filmed in Piuggi's hometown, which he had suggested as a set location for a scene in *Instafamous*. (See id. ¶ 63.)

("implied covenant"), against GFY (Count III); and (4) unjust enrichment, against GFY (Count IV).[5] (See Compl. ¶¶ 76-108.) Piuggi attached to his Complaint a copy of his Certificate. (See Dkt. No. 8-2, Compl. Ex. B.)

Consistent with the Court's Individual Practices, Grand Street wrote to Piuggi on June 20, 2023, stating that it intended to move to dismiss Counts I and II of the Complaint for failure to state a claim and to further move for an award of fees and sanctions pursuant to Rule 11. (See "First Motion" or "First Mot.," Dkt. No. 22.) After the Court denied Piuggi's request for an extension of time to respond to Grand Steet's pre-motion letter (See Dkt. No. 26), Piuggi failed to file a response. The Court accordingly granted Grand Street's request to deem its pre-motion letter as an opening memorandum of law and entered a briefing schedule. (See Dkt. No. 28.) Pursuant to the Court's order, Piuggi submitted his opposition (see "First Opposition" or "First Opp.," Dkt. No. 31) on July 13, 2023, to which he attached a 28-page affidavit ("Affidavit") (see "Aff.," Dkt. No. 31-1) plus 17 additional exhibits (see Dkt. Nos. 31-2 through 31-18 [hereinafter "Exhibits" or "Exs."]). Grant Street filed its reply on July 20, 2023. (See "First Reply," Dkt. No. 32.)

---

[5] Piuggi raises his unjust enrichment claim in the alternative to his breach of contract claim. (See Compl. ¶¶ 101-07.)

WBD filed a pre-motion letter of its own on September 26, 2023, stating its intent to move to dismiss Counts II through IV — to the extent those claims were brought against WBD and had not already been addressed by Grand Street's First Motion — and to dismiss Piuggi's request for statutory damages and attorney's fees under the Copyright Act. (See Dkt. No. 40.) As before, Piuggi did not respond to WBD's pre-motion letter. Rather than deeming WBD's pre-motion letter as an opening memorandum of law as it had for Grand Street, the Court adopted WBD's proposed briefing schedule and granted its request to join in Grand Street's fully-briefed First Motion. (See Dkt. No. 42.) WBD filed its motion to dismiss (see Dkt. No. 43) on October 10, 2023, along with a memorandum of law (see "Second Motion" or "Second Mot.," Dkt. No. 44 [collectively with the First Motion, the "Motions"]) and a supporting declaration (see Dkt. No. 45). On November 13, 2023, Piuggi submitted his opposition (see "Second Opposition" or "Second Opp.," Dkt. No. 49), to which he attached a 55-page document he describes as his Treatment for *Instafamous* (see Dkt. No. 49-1). WBD filed its reply on November 20, 2023. (See "Second Reply," Dkt. No. 50.)

On November 8, 2023, GFY filed a letter informing the Court that it had exchanged a pre-motion letter with Piuggi on July 17, 2023, requesting that he withdraw the claims

brought against them, but that Piuggi had not responded. (See Dkt. No. 41 (attaching GFY's pre-motion letter).) Rather than file its own motion to dismiss (as WBD had), however, GFY only requested permission to join in Grand Street's fully-briefed First Motion (see id.), which the Court granted (see Dkt. No. 42). As discussed in greater detail below, GFY did not request to join in WBD's Second Motion, which was at that time still being briefed.

## II.   RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations, but [must] accept as true the factual allegations of the complaint, and construe all reasonable

inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (citation, quotation marks, and alteration omitted); see Iqbal, 556 U.S. at 678.

"In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010)(citation and quotation marks omitted).

### III. **DISCUSSION**

Before turning to the merits of the dispute and related motions, the Court addresses several preliminary issues.

First, in ruling on the Motions, the Court will not consider the affidavit Piuggi attached to his First Opposition. See Colon v. Annucci, 344 F. Supp. 3d 612, 644 (S.D.N.Y. 2018) ("The Court will not consider factual allegations raised in supplemental . . . affidavits."). Nor will the Court consider the Exhibits attached to Piuggi's First Opposition, with two exceptions. "Generally, courts do not look beyond facts stated on the face of the complaint, documents incorporated in the complaint, matters of which judicial notice may be taken and documents that are 'integral'

to the complaint." Nunes v. NBCUniversal Media, LLC, 643 F.
Supp. 3d 403, 411 (S.D.N.Y. 2022) (quoting Goel v. Bunge,
Ltd., 820 F.3d 554, 559 (2d Cir. 2016)); see 170 Mercer LLC
v. Rialto Cap. Advisors, LLC, No. 20 Civ. 2496, 2021 WL
1163649, at *2 (S.D.N.Y. Mar. 25, 2021). The only Exhibits
that the Complaint incorporates by reference are (a) the NDAs
(Exs. 3, 13) signed by Grand Street and GFY and (b) the
invoice (the "Invoice") (Ex. 7) of Piuggi's $2,500 deposit
paid to GFY. (See Compl. ¶¶ 1, 26, 31.) As Defendants
acknowledge (see First Reply at 2 n.1), the NDAs are integral
because they "underl[ie the] factual allegations" of Piuggi's
breach of contract claim. 170 Mercer LLC, 2021 WL 1163649, at
*3. For the same reason, the Invoice is integral because it
underlies Piuggi's allegation that he had an implied contract
with GFY. (See Compl. ¶ 41.)

The remaining Exhibits serve only to supplement the
allegations raised in the Complaint.[6] See Logfret, Inc. v.
Gerber Fin., Inc., 559 F. Supp. 3d 348, 361 (S.D.N.Y. 2021)
("[N]ew facts and allegations, first raised in a Plaintiff's
opposition papers, may not be considered in deciding a motion

---

[6] The remaining Exhibits include what appear to be (a) iPhone screenshots
of emails and iMessages between Piuggi and others (Exs. 1, 4-5, 8, 10-
11, 14-17); (b) screenshots of Piuggi's purported Google Drive (Ex. 12);
(c) screenshots of several websites such as IMDB (Ex. 9); (d) Piuggi's
retainer agreement with his attorneys (Ex. 2); and (e) a photograph Piuggi
purportedly took of a "taunt" written on a chalkboard (Ex. 6; see Aff.
¶ 31).

to dismiss." (quotation marks omitted)); <u>Ferreira v. N.Y.C.</u>
<u>Dep't of Educ.</u>, No. 22 Civ. 4993, 2024 WL 308005, at *3
(S.D.N.Y. Jan. 26, 2024) ("[A]llegations raised for the first
time in an opposition brief cannot defeat a motion to dismiss,
and such allegations do not automatically amend the
complaint."). If Piuggi wishes to raise new factual
allegations in support of his claims, the proper avenue to do
so is by amending his Complaint. <u>See</u> Fed. R. Civ. P. 15(a)(2).

Second, the Court will not consider any of the non-
responsive arguments (or documents) offered by Piuggi in his
Second Opposition. WBD asks that the Court disregard Piuggi's
Second Opposition as "non-responsive to WBD's motion" and an
"improper sur-reply" to Grand Street's First Motion. (Second
Reply at 1.) "The S.D.N.Y. local rules do not contemplate the
submission of a sur-reply in further opposition to a motion,"
<u>Lazare Kaplan Int'l Inc. v. KBC Bank N.V.</u>, 337 F. Supp. 3d
274, 288 (S.D.N.Y. 2018) (quoting Local Civil Rule 6.1), and
this Court's Individual Practices provide that "[s]ur-reply
memoranda will not be accepted without prior permission of
the Court and then only in the rare instances in which new
controlling law is promulgated after the filing of the reply
papers," Individual Practices of U.S.D.J. Victor Marrero at
II.D.1. <u>See</u> <u>Allen v. Avon Prod., Inc.</u>, No. 81 Civ. 6895, 1988
WL 18841, at *5 n. 2 (S.D.N.Y. Feb. 22, 1988) ("It is this

Court's policy not to accept supplemental submissions with respect to pending motions, filed without permission."); <u>Bisesto v. Uher</u>, No. 19 Civ. 1678, 2019 WL 2537452, at *2 (S.D.N.Y. June 20, 2019) (collecting cases). Piuggi nonetheless devotes the majority of his Second Opposition to re-briefing the merits of his copyright claim, even though those arguments were not raised in the Second Motion. (<u>See</u> Second Opp. at 4-9; <u>see also id.</u> at 9 (spending the remaining two paragraphs on the breach of contract claim and neglecting to address WBD's arguments in support of dismissing the implied covenant and unjust enrichment claims).) Piuggi also attaches a copy of his Treatment for *Instafamous* (<u>see</u> Dkt. No. 49-1)[7] — presumably in a belated effort to rebut Grand Street's arguments that he failed to demonstrate a substantial similarity between *Instafamous* and the allegedly infringing works (<u>see</u> First Mot. at 2-3; First Reply 3-5).

Leave to file a sur-reply was neither sought nor given. "[B]esides being contemptuous of court rules," Piuggi's attempt to re-visit issues already fully briefed also "deprives [Grand Street] of an opportunity to respond."

---

[7] Piuggi does not explain whether or to what extent this 55-page copy of his Treatment differs from the 40 pages of documentation he repeatedly refers to in the Complaint and his First Opposition (<u>see</u>, <u>e.g.</u>, Compl. ¶¶ 26, 102-03; First Opp. at 2, 3), but the discrepancy appears attributable to a 15-page "Table" that Piuggi appended to 40 pages of notes (<u>see</u> Dkt. No. 49-1).

Anthropologie, Inc. v. Forever 21, Inc., No. 07 Civ. 7873, 2009 WL 690239, at *5 n. 2 (S.D.N.Y. Mar. 11, 2009). Piuggi had ample opportunity to attach a copy of the Treatment to his Complaint or to include it along with the seventeen other Exhibits he attached to his First Opposition. Instead, he waited until months after the First Motion was fully briefed to produce this key document. The Court will not countenance Piuggi's belated efforts to amend his pleadings in response to deficiencies identified in Defendants' Motions. If Piuggi wishes to supplement his pleadings with supporting allegations, the appropriate avenue is to seek leave to amend the Complaint, as Piuggi requested in the alternative (see First Opp. at 5). See Fed. R. Civ. P. 15(a)(2). Thus, in ruling on the Motions, the Court will not consider the Treatment attached to the Second Opposition and will consider only the Second Opposition's arguments that pertain to the issues raised in WBD's Second Motion.

Third, as noted above, GFY joined in Grand Street's First Motion rather than filing a motion to dismiss of its own. However, the First Motion challenges only the copyright and breach of contract claims and does not raise any arguments concerning the implied covenant or unjust enrichment claims, which were brought only against GFY. And while WBD's Second Motion raises forceful arguments against the implied covenant

and unjust enrichment claims, GFY neglected to join the Second
Motion. (See Dkt. No. 41.) Nevertheless, a "district court
has the power to dismiss a complaint sua sponte for failure
to state a claim on which relief can be granted," as long as
"the plaintiff [is afforded] an opportunity to be heard."
Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991); see Grant
v. Cnty. of Erie, 542 F. App'x 21, 24 (2d Cir. 2013); Hutson
v. Notorious B.I.G., LLC, No. 14 Civ. 2307, 2015 WL 9450623,
at *8 (S.D.N.Y. Dec. 22, 2015); Citadel Mgmt., Inc. v. Telesis
Trust, Inc., 123 F. Supp. 2d 133, 147 (S.D.N.Y. 2000); Smith
v. Metro N. Commuter R.R., No. 98 Civ. 2528, 2000 WL 1449865,
at *2 (S.D.N.Y. Sept. 29, 2000); Fitzgerald v. Feinberg, No.
98 Civ. 8885, 1999 WL 619584, at *5 (S.D.N.Y. Aug. 16, 1999).
Here, the Second Motion clearly argued that Piuggi's implied
covenant claim should be dismissed as duplicative of his
breach of contract claim and that the unjust enrichment claim
is preempted by the Copyright Act. (See Second Mot. at 9-11.)
Piuggi has therefore "had ample notice" of the grounds for
dismissing Counts III and IV and was afforded an "opportunity
to respond" to those arguments. See In re Parmalat Sec.
Litig., 377 F. Supp. 2d 390, 415 n.166 (S.D.N.Y. 2005)
(dismissing claim against defendant sua sponte under Rule
12(b)(6) even though defendant did "not join the arguments"
raised by the other defendants in that action); e.g., Einiger

v. Citigroup, Inc., No. 14 Civ. 4570, 2014 WL 4494139, at *7
(S.D.N.Y. Sept. 12, 2014) (dismissing unjust enrichment claim
sua sponte as "completely preempted by the Copyright Act");
Affiliated Records Inc. v. Taylor, No. 09 Civ. 9938, 2012 WL
1675589, at *5 (S.D.N.Y. May 14, 2012) (same). The Court
therefore exercises its discretion to consider all the
arguments raised in both Motions as pertaining to each of the
relevant Defendants, including GFY.

The Court now turns to the merits of Defendants' Motions.

## A.   **Copyright Infringement**

Piuggi brings his copyright infringement claim against
all Defendants, based on allegations they engaged in a
"concerted" effort to appropriate *Instafamous* to produce *Fake
Famous* and *FBOY Island*. (Compl. ¶¶ 77-81.) "To establish
infringement, two elements must be proven: (1) ownership of
a valid copyright, and (2) copying [by defendant] of
constituent elements of [plaintiff's] work that are
original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499
U.S. 340, 361 (1991); see Abdin v. CBS Broad. Inc., 971 F.3d
57, 66 (2d Cir. 2020). To satisfy the second element, a
plaintiff must demonstrate that "(1) the defendant has
actually copied the plaintiff's work; *and* (2) the copying is
illegal because a substantial similarity exists between the
defendant's work and the protectible elements of plaintiff's

16

[work]." <u>Peter F. Gaito Arch.</u>, 602 F.3d at 63 (emphasis added) (quotation marks and citation omitted); <u>see</u> <u>Abdin</u>, 971 F.3d at 66.

Defendants argue that the copyright claim must be dismissed because Piuggi cannot satisfy either element. First, they claim that Piuggi "has no copyright claim to assert" because he "concedes" that the project he shared with Grand Street and GFY is merely a non-copyrightable "idea" or "concept." (First Mot. at 1.) Second, they argue that Piuggi fails to plead any non-conclusory, plausible allegations of either "actual copying" or "substantial similarity." For the reasons explained below, the Court concludes that Piuggi has asserted a valid copyright in *Instafamous* but finds that Piuggi has not adequately pleaded "actual copying" or "substantial similarity."

### 1. *Copyrightability*

Defendants argue that Piuggi cannot satisfy the first element of the infringement inquiry because he "has no copyright claim to assert." (First Mot. at 1.) Piuggi, in turn, argues that he presumptively established that he is asserting a valid copyright by producing his Certificate. (<u>See</u> First Opp. at 2.)

The Court agrees with Piuggi that his Certificate is sufficient, at this stage, to satisfy the first element of a

copyright claim. A "certificate of registration" from the Copyright Office "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); see Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997) ("A certificate of registration is prima facie evidence that the copyright is valid."). Piuggi attached to his Complaint the Certificate for _Instafamous_, which identifies him as the author and as responsible for "production, direction, script/screenplay, cinematography, [and] editing." (Dkt. No. 8-2, Compl. Ex. B.) Piuggi has therefore made a _prima facie_ showing that he is asserting "a valid copyright." Gross v. NYP Holdings, Inc., No. 06 Civ. 7863, 2007 WL 1040033, at *2 (S.D.N.Y. Apr. 4, 2007) (quoting Nicholls v. Tufenkian Import/Export Ventures, Inc., 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005)).

Defendants argue that Piuggi "concedes" his work is non-copyrightable (First Mot. at 1), because the Complaint repeatedly describes the project Piuggi shared with Grand Street and GFY as a "concept" or "idea" — neither of which is protected by copyright law. See Attia v. Soc'y of N.Y. Hosp., 201 F.3d 50, 54 (2d Cir. 1999) ("It is a fundamental principle of our copyright doctrine that ideas [and] concepts . . . are not protected from copying."). (See, e.g., Compl. ¶¶ 25, 26, 31, 33, 48, 77.) To be sure, Piuggi's frequent description of

his work as a "concept" or "idea" — coupled with his sparse and vague descriptions of the work's protected elements, as well as his failure to timely produce the copyrighted material itself — raises questions about the sufficiency of Piuggi's allegations. But, as discussed in greater detail below, any such defect is more appropriately considered at the substantial similarity inquiry.

The Court therefore finds that Piuggi satisfies the first element of his copyright claim by producing his Certificate for *Instafamous*.

### 2.   *Actual Copying*

Next, Defendants argue that Piuggi has not plausibly alleged that Defendants actually copied his work. (See First Mot. at 1.) "Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial evidence that the defendants had access to the plaintiff's work." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327–28 (S.D.N.Y. 2021). "Because direct evidence of actual copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating [1] that the person who composed the defendant's work had access to the copyrighted material . . . and [2] that there are similarities between the two works that are probative of copying." Lewinson v. Henry Holt & Co., LLC, 659 F. Supp. 2d 547, 562 (S.D.N.Y.

2009) (alteration omitted) (quoting <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 51 (2d Cir. 2003)).[8] "Access means that an alleged infringer had a 'reasonable possibility' — not simply a 'bare possibility' — of [accessing] the prior work." <u>Jorgensen</u>, 351 F.3d at 51 (quoting <u>Gaste v. Kaiserman</u>, 863 F.2d 1061, 1066 (2d Cir. 1988)). "Access may not be inferred through mere speculation or conjecture." <u>Id.</u> (quoting 4 Melville Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 13.02[A], at 13–19 to 13–20 (2002 ed.)).[9]

Here, the Complaint offers no direct evidence of copying. As alleged, Piuggi shared his work directly with Grand Street and GFY — not with HBO. (<u>See</u> Compl. ¶¶ 25-26, 30.) Yet it was HBO — not Grand Street or GFY — that created, produced, and disseminated *Fake Famous* and *FBOY Island*. (<u>See</u> <u>id.</u> ¶¶ 2, 7.) Piuggi must therefore plead a circumstantial case of actual copying by plausibly alleging "a particular

---

[8] Because Piuggi fails to plead access, as explained below, the Court need not decide whether he alleges similarities probative of copying. <u>See</u> <u>Gal v. Viacom Int'l, Inc.</u>, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007).

[9] "[T]here are certain limited situations in which a plaintiff need not prove access at all, because the similarities between the two works are so 'striking' that they alone serve 'both to justify an inference of copying and to prove improper appropriation.'" <u>Clonus Associates v. Dreamworks, LLC</u>, 417 F. Supp. 2d 248, 251-52 (S.D.N.Y. 2005). To make such a showing, the plaintiff must demonstrate that "the works in question are so strikingly similar as to preclude the possibility of independent access." <u>Klauber Bros., Inc. v. URBN US Retail LLC</u>, No. 21 Civ 4526, 2023 WL 1818472, at *3 (S.D.N.Y. Feb. 8, 2023) (quotation marks omitted) (quoting <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 471 (2d Cir. 1995)). But because, as the Court concludes below, Piuggi "fail[s] to allege substantial similarity, it follows that [he] is unable to allege that the works in question are so strikingly similar." <u>Id.</u>, at *5.

chain of events . . . by which [HBO] might have gained access to the [copyrighted] work" through Grand Street or GFY. Clanton, 556 F. Supp. 3d at 328.

Defendants do not dispute that Grand Street and GFY had access to Piuggi's materials for *Instafamous*. (See First Mot. at 1-2.) Piuggi first shared the "synopsis" for *Instafamous* with Grand Street during a January 4, 2021 phone call, which he followed up by emailing a 40-page document "outlining" his ideas for the show. (Compl. ¶¶ 25-26.) After Grand Street passed on the project and referred him to GFY, Piuggi "re-pitched the concept" to GFY during a videoconference on January 19, 2021, followed by a January 21 call with the "full team at GFY" and a "4-hour meeting at GFY studios" on January 26. (Id. ¶¶ 30-31, 33, 38.) But even if Grand Street and GFY had access to Piuggi's materials, that alone does not plausibly allege they actually copied *Instafamous* since they did not produce the allegedly infringing works. See Castro v. Cusack, No. 15 Civ. 6714, 2019 WL 3385218, at *7 (E.D.N.Y. July 26, 2019) (dismissing copyright claim against defendant that had access to plaintiff's manuscript because the "complaint fails to allege" that defendant "had any role in the creation, broadcast, or dissemination of the three [allegedly infringing] works"). Thus, to "establish copying circumstantially," Piuggi must go a step further "by

demonstrating that the person who composed the [allegedly infringing] work" — i.e., HBO — "had access to the copyrighted material." <u>Jorgensen</u>, 351 F.3d at 51.

The thrust of Piuggi's claim is that Grand Street and GFY worked in concert with WBD as part of a collusive scheme to "steal show concepts" from unsuspecting writers, including himself. (Compl. ¶ 74.) He alleges that "Defendants and other major studios have developed a clever system that allows them to steal show concepts through the use of independent contractor entities." (<u>Id.</u> ¶ 75.) But "[s]uch bald assertions are not sufficient to plausibly allege access." <u>Cusack</u>, 2019 WL 3385218, at *7; <u>see Iqbal</u>, 556 U.S. at 678 (conclusory allegations without factual support are insufficient to survive a motion to dismiss).

To be sure, Piuggi attempts to bolster this explosive theory with more specific and concrete allegations purporting to tie Grand Street and GFY to WBD. Ordinarily, a "plaintiff may establish access 'through third parties connected to both a plaintiff and a defendant.'" <u>Feuer-Goldstein, Inc. v. Michael Hill Franchise Pty. Ltd.</u>, No. 16 Civ. 9987, 2019 WL 1382341, at *6 (S.D.N.Y. Mar. 27, 2019) (quoting <u>Gaste</u>, 863 F.2d at 1067). "In such a case, 'an inference of access requires more than a mere allegation that someone known to the defendant possessed the work in question.'" <u>Id.</u>

(alteration omitted) (quoting <u>Tomasini v. Walt Disney Co.</u>, 84 F. Supp. 2d 516, 522 (S.D.N.Y. 2000)). "Access through an intermediary may be inferred if the intermediary 'has a close relationship with the infringer.'" <u>Id.</u> (quoting <u>Lessem v. Taylor</u>, 766 F. Supp. 2d 504, 508–09 (S.D.N.Y. 2011)). "Such a relationship exists, for example, if the intermediary 'supervises or works in the same department as the infringer or contributes creative ideas to the infringer.'" <u>Id.</u> (alteration omitted) (quoting <u>Jorgensen</u>, 351 F.3d at 53).

Even though Grand Street and GFY had access to Piuggi's work, they did not have a sufficiently "close relationship" with WBD to support a plausible inference that WBD had access. <u>Id.</u> Piuggi alleges several third parties connect Grand Street and GFY to WBD. But the Court finds those alleged connections are either wholly implausible or amount to little more than "speculation or conjecture." <u>Jorgensen</u>, 351 F.3d at 51; <u>see Clanton</u>, 556 F. Supp. 3d at 328 & n.3 (stating that an alleged "chain of events" by which defendants may have accessed plaintiff's work must be "more than hypothetical" (quoting <u>Bouchat v. Baltimore Ravens, Inc.</u>, 241 F.3d 350, 354–55 (4th Cir. 2001)).

For example, Piuggi alleges that Rooney — who introduced him to Maurice, the brother of Grand Street's owner Lowell, in 2018 — "has a *new* record label, TLR Music, that is [] a

current partner of Warner." (Id. ¶ 50 (emphasis added).) But Rooney cannot serve as an "intermediary" between Grand Street (or GFY) and WBD because Piuggi never alleges that Rooney himself had access to Piuggi's work. See Jorgenson, 351 F.3d at 53 ("A court may infer that the alleged infringer had a reasonable possibility of access if the author sent the copyrighted work to a third party intermediary who has a close relationship with the infringer.") (quoting Towler v. Sayles, 76 F.3d 579, 583 (4th Cir. 1996)); cf. Price v. Fox Ent. Grp., Inc., No. 05 Civ. 5259, 2007 WL 241389, at *8 (S.D.N.Y. Jan. 27, 2007) (finding "reasonable possibility" that infringer "had access through a third party intermediary" because the intermediary "undisputedly received the [plaintiff's work]" during the relevant time period). Moreover, Piuggi alleges that Rooney has a *present* connection to WBD — not that he had any connection to HBO or its parent company in 2021, when the alleged infringement occurred. See Jorgenson, 351 F.3d at 55 (holding access cannot be inferred unless intermediary was affiliated with infringer in the period between intermediary's access and when the infringing work was published); Towler, 76 F.3d at 583 (refusing to infer access where intermediary's connection to infringer fell outside the relevant time period).

Similarly, Piuggi's attempt to draw a connection between GFY and HBO does not line up. Piuggi alleges that GFY executive Jeff Cobelli "admitted" during a recorded phone call on March 26, 2021, that he had "shared information about" *Instafamous* with Lewick, who used to work as "a camera operator for American Chopper" (Compl. ¶ 58) - a television series produced and distributed by Discovery Channel between 2002 and 2020.[10] The Complaint describes *American Chopper* as "another Warner-owned brand" (id.), presumably because Discovery Channel is currently owned by Warner.[11] But Warner did not acquire Discovery Channel until April 2022[12] - long after *American Chopper* had finished its run and HBO released *Fake Famous* and *FBOY Island*. So Lewick's tenure on *American Chopper* cannot link him to HBO when the alleged infringement occurred. And even if Discovery Channel and HBO *had* shared a corporate parent, that still would not have been enough to

---

[10]   See   The   Internet   Movie   Database   (IMDb), https://www.imdb.com/title/tt0364779/ (last visited June 7, 2024). These facts are subject to judicial notice. See Lewis v. M&T Bank, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) ("Courts may take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2)); see, e.g., Walkie Check Prods., LLC v. ViacomCBS Inc., No. 21 Civ. 1214, 2022 WL 2306943, at *5 (S.D.N.Y. June 27, 2022) (taking judicial notice of search results on IMDb website).

[11] See *Our Company*, https://wbd.com/ (last visited June 7, 2024).

[12] See AT&T Inc. Quarterly Report Ended June 30, 2022 (Form 10-Q/A), at 9, 28, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0000732717/000073271722 000093/t-20220630.htm.

plead access. See Feuer-Goldstein, Inc., 2019 WL 1382341, at
*6 (stating access requires that the "creators *themselves*,
and not only an affiliated corporation, had access to the
work that was allegedly copied" (quoting Clonus Assocs. v.
Dreamworks, LLC, 457 F. Supp. 2d 432, 439 (S.D.N.Y. 2006)).
There is no allegation that Discovery Channel and HBO shared
employees, office space, or channels of communication. Thus,
Cobelli's   admission   that   he   shared   information   about
*Instafamous* with Lewick does not plausibly suggest that this
information made its way to HBO. See id.; Jorgenson, 351 F.3d
at 55; Towler, 76 F.3d at 583.

Piuggi's remaining allegations are otherwise too tenuous
to plausibly support his claims. He claims that Maurice was,
at  some  unspecified  time  and  in  some  unspecified  role,
"involv[ed]  in  the  Sopranos,  an  HBO  hit  series."  (Compl.
¶ 49.)  But,  like  Rooney,  Maurice  cannot  serve  as  an
intermediary to HBO because he is not alleged to have had
access himself to Piuggi's work. See Jorgenson, 351 F.3d at
53. Plus, even if Maurice's "involvement" with *The Sopranos*
(Compl.  ¶  49)  could  establish  that  he  had  a  "close
relationship" with WBD, see Feuer-Goldstein, 2019 WL 1382341,
at  *6,  that  connection  would  have  ended  long  before  the

26

relevant time period,[13] <u>see</u> <u>Jorgenson</u>, 351 F.3d at 55. <u>See also</u> <u>Towler</u>, 76 F.3d at 583 (refusing to "infer access simply because [defendant] worked with [intermediary's] predecessor on unrelated projects several years before [plaintiff] sent [his screenplay] to [the intermediary]"). Piuggi also claims that Guma (Lowell's partner at Grand Street) had an undefined "previous partnership with Warner, HBO's parent company, and STX," which Piuggi alleges would "ultimately become the production company responsible for FBOY Island." (<u>Id.</u>) Even so, such "a chain of 'hypothetical transmittals' or 'theoretical possibilities' [is] 'legally insufficient to prove access.'" <u>Poppington LLC v. Brooks</u>, No. 20 Civ. 8616, 2022 WL 2121478, at *3 (S.D.N.Y. June 13, 2022).

At bottom, Piuggi's allegations — that WBD must have had access to his work through one (or several) of those connections to Grand Street and GFY — mirror the circumstantial theory rejected in <u>Castro v. Cusack</u>. There, the plaintiff brought a copyright action against the actor John Cusack, Cusack's agency, and several production companies based on allegations that they had appropriated the

---

[13]  *The Sopranos* series finale aired in 2007. <u>See</u> IMDb, https://www.imdb.com/title/tt0141842/ (last visited June 18, 2024); <u>see also</u> Alessandra Stanley, *One Last Family Gathering*, N.Y. TIMES (June 11, 2007) ("The abrupt finale last night was almost like a prank, a mischievous dig at viewers who had agonized over how television's most addictive series would come to a close.")

plaintiff's copyrighted manuscript to create three "hit television shows." 2019 WL 3385218, at *1, *7. After first dismissing the claim against Cusack and his agency because there was no allegation either defendant "had any role in the creation, broadcast, or dissemination" of those three TV shows, the court dismissed the claim against the production companies directly responsible for those TV shows because the plaintiff "simply cannot connect the dots between John Cusack, to whom he mailed the manuscript, and any of [the production companies]." Id. at *7. Like Piuggi, the plaintiff in Cusack did not allege how or when Cusack shared the manuscript with the production companies. Instead, like Piuggi, the plaintiff speculated that Cusack must have shared the manuscript with the production companies through one of the dozens of individuals he alleges were connected to both Cusack and the production companies. See id. (explaining that plaintiff's "theory relies on wholesale speculation that, like a regifted Christmas fruitcake, the manuscript found its way from John Cusack's agency to an array of actors, talent agencies, and production companies"). The court therefore rejected any inference that the production companies could have had access through those remote connections as nothing more than "conjecture." Id.

As in Cusack, the mere fact that Defendants have some remote connections in common is not enough to "nudge" Piuggi's allegation of actual copying "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; cf. Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc., No. 17 Civ. 8078, 2018 WL 4757961, at *5 (S.D.N.Y. Sept. 30, 2018) (holding allegations must not only be "consistent" with plaintiff's claim but must "plausibly suggest that is what in fact occurred" (quotation marks and alterations omitted)). Piuggi's thinly alleged connections are "simply too speculative to give rise to a reasonable possibility" that Grand Street or GFY gave WBD access to Piuggi's work. Tomasini, 84 F. Supp. 2d at 521.

### 3. *Substantial Similarity*

Because Piuggi has failed to plead "access," the Court need not decide whether he has pleaded "substantial similarity." See Wager v. Littell, No. 12 Civ. 1292, 2013 WL 1234951, at *4 (S.D.N.Y. Mar. 26, 2013), aff'd, 549 F. App'x 32 (2d Cir. 2014). But even assuming Defendants had access to Piuggi's materials for *Instafamous*, dismissal is still warranted because Piuggi "fail[ed] to plead facts regarding how the [works] are 'substantially similar,' including identifying the protectable elements of the works." Ritani, LLC v. Aghjayan, 880 F. Supp. 2d 425, 442 (S.D.N.Y. 2012).

As an initial matter, the Court rejects Piuggi's suggestion that it would be improper for the Court to reach the question of substantial similarity at the motion to dismiss stage. (See First Opp. at 3.) As the Second Circuit has recognized, "there is ample authority for the proposition that a district court may make a determination as to substantial similarity on a motion to dismiss for failure to state a claim." Peter F. Gaito Arch., 602 F.3d at 64 (quotation marks and alteration omitted) (collecting cases); see McDonald v. West, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015) ("District courts in this circuit may evaluate a question of substantial similarity at the motion to dismiss stage under Rule 12(b)(6)."); e.g., Abdin, 971 F.3d at 66-67 (affirming dismissal of copyright claim because plaintiff "failed to plausibly allege substantial similarity"); Warner v. Amazon.com, Inc., No. 22 Civ. 05907, 2023 WL 6317954, at *8 (S.D.N.Y. Sept. 28, 2023) (dismissing copyright claim for failure to demonstrate substantial similarity); Clanton, 556 F. Supp. 3d at 334 (same); Castorina v. Spike Cable Networks, Inc., 784 F. Supp. 2d 107, 110-14 (E.D.N.Y. 2011) (same). Though Piuggi "is not required to prove h[is] claim at the pleading stage," he "nevertheless has the burden of properly alleging h[is] claim, which includes . . . identifying with some degree of specificity how Defendant[s'] works are

substantially similar to h[is] own." <u>Lambertini v. Fain</u>, No.
12 Civ. 3964, 2014 WL 4659266, at *4 (E.D.N.Y. Sept. 17,
2014).

"In most cases, the test for 'substantial similarity' is
the so-called 'ordinary observer test' which inquires whether
'an average lay observer would recognize the alleged copy as
having been appropriated from the copyrighted work.'"
<u>Lewinson</u>, 659 F. Supp. 2d at 564 (alterations omitted)
(quoting <u>Knitwaves, Inc. v. Lollytogs Ltd.</u>, 71 F.3d 996, 1002
(2d Cir. 1995)). But "[w]hen comparing works that contain
both protectable and non-protectable elements," as in this
case, courts in this Circuit "apply a 'more discerning
ordinary observer test' by considering whether there is
substantial similarity 'between those elements, and only
those elements, that provide copyrightability to the
allegedly infringed work.'" <u>Id.</u> (alteration omitted) (quoting
<u>Boisson v. Banian, Ltd.</u> 273 F.3d 262, 272 (2d Cir. 2001)). In
applying this test, courts "look to the total concept and
feel of the protected work and the allegedly infringing work
while also keeping in mind the distinction between a work's
non-protectible elements and its selection, coordination,
arrangement, and expression of those elements — which are
protectible." <u>Id.</u> (quotation marks and alteration omitted).
This holistic inquiry "requires courts to consider

similarities in such aspects as total concept and feel, theme, characters, plot, sequence, pace, and setting of two works." Id. (quotation marks omitted); see Peter F. Gaito Arch., 602 F.3d at 66 (emphasizing that substantial similarity is often "apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art — the excerpting, modifying, and arranging of unprotectible components — are considered in relation to one another" (quotation marks and alterations omitted)).

Applying that standard, the Court finds that the Complaint does not come close to demonstrating a substantial similarity between *Instafamous* and either of HBO's TV shows.

To start, Piuggi fails to identify any of *Instafamous*' protectable elements. See Lewinson, 659 F. Supp. 2d at 564 ("In applying [the substantial similarity test], courts must be mindful that 'the mere fact that a work is copyrighted does not mean that every element of the work may be protected.'" (alteration omitted) (quoting Feist, 499 U.S. at 348)). As discussed already, Piuggi broadly alleges that Defendants stole his "ideas" and "concepts" for *Instafamous*. (See, e.g., Compl. ¶ 2 ("[M]any of [Piuggi's] *concepts* for 'Instafamous' were appropriated by 'Fake Famous.'"); id. ¶ 25 ("Piuggi chose to share his *concept* with [Grand Street].") ; id. ¶ 32 ("Piuggi pitched the *concept* of 'Instafamous' to

Grand Street."); id. ¶ 33 ("[Piuggi] re-pitched the entire *concept* [to GFY]."); id. ¶ 48 ("Piuggi for the first time watched the 'Fake Famous' trailer and realized his *concepts* were being fed to HBO.").)[14] Yet, as Defendants now acknowledge (see First Opp. at 1), "ideas" and "concepts" are not copyrightable. 17 U.S.C. § 102; see Attia, 201 F.3d at 54; Abdin, 971 F.3d at 67; Williams v. A & E Telev. Networks, 122 F. Supp. 3d 157, 161-62 (S.D.N.Y. 2015).

Piuggi nonetheless insists that his allegations go beyond "mere ideas and concepts" to encompass "specific," "concrete," and "original expression" of his ideas. (First Opp. at 1-2.) Though "copyright does not protect ideas" themselves, it can protect an "author's particularized expression of the idea." Mattel, Inc. v. Goldberger Doll Mfg. Co., 365 F.3d 133, 135-36 (2d Cir. 2004); see Feist, 499 U.S. at 349-50 (describing this as the "idea/expression dichotomy"); Abdin, 971 F.3d at 67; Nichols v. Universal Pictures Corp., 45 F.2d 119, 121 (2d Cir 1930) (Hand, J.). The "distinction between an idea and its expression is an elusive one," Williams v. Crichton, 84 F.3d 581, 587-88 (2d Cir. 1996), that turns on the particular way in which "the author has selected, coordinated, and arranged the elements

---

[14] All emphases added.

of his . . . work," <u>Peter F. Gaito Arch.</u>, 602 F.3d at 64 (quotation marks and citation omitted). <u>See</u> <u>Warner</u>, 2023 WL 6317954, at *9-10 (observing that "the demarcation between idea and expression" lies in a work's particular "treatment, details, scenes, events, and characterization" (quoting <u>Reyher v. Children's Television Workshop</u>, 533 F.2d 87, 91 (2d Cir. 1976)). At the same time, "certain literary or cinematographic elements are not protected even if they take the form of concrete expression." <u>Muller v. Twentieth Century Fox Film Corp.</u>, 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011).

For instance, "stock themes" that are "commonly linked to a particular genre" do not receive copyright protection. <u>Abdin</u>, 971 F.3d at 70-71 (quotation marks and citation omitted). Similarly, copyright protection does not extend to "scènes à faire" - i.e., "elements of a work that are indispensable, or at least standard, in the treatment of a given topic," such as "cowboys, bank robbers, and shootouts in stories of the American West." <u>Zalewski v. Cicero Builder Dev., Inc.</u>, 754 F.3d 95, 102 (2d Cir. 2014)(citation omitted). Thus, the Second Circuit has held that "electrified fences, automated tours, dinosaur nurseries, and uniformed workers" are typical scènes à faire that flow from the uncopyrightable idea of a dinosaur zoo. <u>Crichton</u>, 84 F.3d at 589. Likewise, "alien encounters" and "advanced technolog[ies]" are

34

considered "generic themes" of the science fiction genre and accordingly are not afforded copyright protection. Abdin, 971 F.2d at 71 (collecting cases).

Piuggi insists that "the Complaint contains many examples of . . . substantial similarity, including the thorough comparison of specific elements, characters, plot lines, [and] shooting locations." (First Opp. at 3.) The Court's review of the Complaint, however, does not support that contention. Piuggi pitched *Instafamous* as "a documentary-style reality TV show incorporating an underlying faux-dating show competition," that "would expose the superficiality of Instagram, 2020s dating culture, while simultaneously causing the contestants . . . to reveal their true and selfish nature." (Compl. ¶¶ 23-24.) Yet these "stock concepts" are common to reality dating shows and are "unprotectable in and of themselves." Castorina, 784 F. Supp. 2d at 111. He describes his "concept" as "a dating show where no one finds love." (Id. ¶ 26.). But "generalized plot devices are not entitled to copyright protection." Arden v. Columbia Pictures Indus., Inc., 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995) (alteration and citation omitted). Piuggi also alleges Defendants stole his idea for a "'backstabbing friends' role." (Compl. ¶ 33.) However, copyright protection does not extend to "generic and generalized character traits," Abdin,

35

971 F.3d at 67, or "stock characters," Lewinson, 659 F. Supp. 2d at 567. See Hord v. Jackson, 281 F. Supp. 3d 417, 426 (S.D.N.Y. 2017) ("The bar for substantial similarity in a character is set quite high.") (citation omitted); Nichols, 45 F.2d at 121 ("[T]he less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly."). Piuggi's idea to cast his "friend" Morosky (Compl. ¶ 46-47) is likewise not protected by copyright. See A&E Television Networks, LLC v. Big Fish Ent., LLC, No. 22 Civ. 7411, 2023 WL 4053871, at *12 (S.D.N.Y. June 16, 2023) ("[O]ne cannot own a copyright in an individual, like host Dan Abrams.") (collecting cases).

Simply put, none of the elements Defendants allegedly incorporated from *Instafamous* — e.g., a dating competition, social media use by the contestants, documentary-style filming, and casting a specific actor — are protected by copyright. Cf. Latimore v. NBC Universal Telev. Studio, 480 F. App'x 649, 651 (2d Cir. 2012) (finding no substantial similarity where both TV shows used the same "staples of reality television" and "common elements" such as "team-based competition, elimination, and communal living"); Hogan v. DC Comics, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (finding no substantial similarity even though protagonists in both works shared "the same name," were both "half-vampire," and

were "indoctrinated into the forces of evil by killing," because those were "unoriginal, and therefore, unprotectable elements"); Arden, 908 F. Supp. at 1261 (S.D.N.Y. 1995) ("Although [both characters] bear superficial similarities, such as the fact that both are bachelors in their thirties, both pursue love interests and are somewhat chauvinistic and self-centered, any such similarities are concepts or ideas that do not reach the level of copyrightable expression.").

To be sure, "although stock concepts and scènes à faire are unprotectable in and of themselves, their selection, coordination, and arrangement, can be protectable, to the extent that it reflects a particular expression of ideas." A & E Telev. Networks, 122 F. Supp. 3d at 162 (quotation marks, citations, and alterations omitted). However, the Complaint fails to "augment these stock concepts with significant detail or imagination to render the arrangement original." Id. at 164; see Castorina, 784 F. Supp. 2d at 111 (emphasizing that a work's copyrightability "flow[s] from the unique way the authors put together various stock ideas" (quotation marks omitted)). The Complaint is replete with conclusory allegations that *Fake Famous* and *FBOY Island* are "similar" to *Instafamous*. (E.g., Compl. ¶ 2 (stating *Fake Famous* was a "similar genre" to *Instafamous*); id. ¶ 32 (describing *Fake Famous* as a "similarly themed documentary");

id. ¶ 43 (alleging *Fake Famous* "shares many similar thoughts" with *Instafamous*"); id. ¶ 52 (alleging his attorneys at Loeb & Loeb "displayed confusion as to the striking similarity" between *Fake Famous* and *Instafamous*).) Piuggi loosely alleges that *Fake Famous* employed "certain editing styles and plot points" that he and GFY had discussed for *Instafamous* during a February 3, 2021 call, without specifying what those editing styles and plot points were. (Id. ¶ 42.) And he refers to unspecified "elements" from *FBOY Island* that he alleges were "pulled word-for-word from [his] original concept," without further elucidation. (Id. ¶ 68; see also id. ¶ 11 (alleging *FBOY Island* and *Fake Famous* "appropriate many elements of 'Instafamous' verbatim" without any additional description or examples).) Those vague allegations do not support Piuggi's contention that *Instafamous*'s unique arrangement of stock concepts constitutes a "particular expression of ideas" protected by copyright. A & E Telev. Networks, 122 F. Supp. 3d at 162 (citation omitted).

And even if they did, Piuggi still does not allege how *Fake Famous*'s and *FBOY Island*'s "total concept and overall feel" is substantially similar to *Instafamous*'s. Peter F. Gaito Arch., 602 F.3d at 66. Indeed, courts in this District have routinely dismissed copyright claims where plaintiffs alleged a greater degree of similarity than Piuggi alleges

here. See, e.g., Allen v. Scholastic Inc., 739 F. Supp. 2d 642, 659 (S.D.N.Y. 2011) (finding no substantial similarity where both works concerned "famous male wizards, initiated late into wizarding (in pre-/early adolescence), who receive formal education in wizarding and are chosen to compete in year-long wizard competitions"); Sheldon Abend Revocable Tr. v. Spielberg, 748 F. Supp. 2d 200, 208 (S.D.N.Y. 2010) (finding no substantial similarity where "both works [told] the story of a male protagonist, confined to his home, who spies on neighbors to stave off boredom, . . . discovers that one of his neighbors is a murderer, . . . is himself discovered by the suspected murderer, is attacked by the murderer, and is ultimately vindicated."). Without more color, Piuggi has failed to allege that *Fake Famous* and *FBOY Island* are substantially similar to "the original way in which [Piuggi] has selected, coordinated, and arranged the elements" of *Instafamous*. Peter F. Gaito Arch., 602 F.3d at 64 (quotation marks and citation omitted).

Piuggi claims that his "specific and concrete expressions of his concepts" are "demonstrated in multiple detailed documents." (First Opp. at 2.) To the contrary, the vagueness of Piuggi's allegations is compounded by his failure to produce any copies of his original work. See Allen, 739 F. Supp. 2d at 645–46 ("[D]etermining whether substantial

similarity exists [on a motion to dismiss] requires courts to engage in a detailed examination of the works themselves." (quoting Lewinson, 659 F.Supp.2d at 562)). Despite repeatedly alleging that he shared his 40-page Treatment with Grand Street and GFY (see Compl. ¶¶ 26, 102-03), Piuggi (for reasons unexplained) neglected to attach that Treatment to the Complaint or his initial opposition papers.[15] And the Complaint is silent about what other materials, if any, Piuggi submitted to the Copyright Office in support of his application for a registration certificate. Without a copy of Piuggi's original work, it is impossible to compare the "total concept and overall feel" of *Instafamous* and HBO's TV shows. Peter F. Gaito Arch., 602 F.3d at 66. Compare Compl. ¶¶ 23-24, 26, 42, 68 (levying conclusory and vague comparisons of the works), with Abdin, 971 F.3d at 67-74 (dismissing copyright claim after detailed and extensive comparison of both parties' works to determine whether there was a "substantial similarity" between them), Shull v. TBTF Prods. Inc., No. 18 Civ. 12400, 2019 WL 5287923, at *6-16 (S.D.N.Y. Oct. 4, 2019) (same), and Castorina, 784 F. Supp. 2d at 110-13 (same). Even if Piuggi *had* alleged a series of protectable

---

[15] As noted above, the Court declines to consider the Treatment that Piuggi belatedly attached to his Second Opposition, as doing so at this late stage would deprive Defendants of the opportunity to respond to Piuggi's new allegations. See Anthropologie, 2009 WL 690239, at *5 n.2.

elements shared by *Instafamous* and HBO's shows (which he does not), that still would have been insufficient to demonstrate a substantial similarity, absent a copy of Piuggi's original work. See Allen, 739 F. Supp. 2d at 663 (S.D.N.Y. 2011) (stating that "random similarities scattered throughout the works cannot by themselves support a finding of substantial similarity" on a motion to dismiss (alterations and citation omitted)); Hord, 281 F. Supp. 3d at 425 n.6 ("District Courts are directed to ignore lists provided by Plaintiffs of purported similarities between two works." (citing Crichton, 84 F.3d at 590 ("Although [plaintiff] points to several specific instances of similarity, . . . such lists are inherently subjective and unreliable, particularly where the list emphasizes random similarities scattered throughout the works. . . . Such a scattershot approach cannot support a finding of substantial similarity." (quotation marks omitted)))).

In sum, Piuggi's vague and conclusory allegations of unspecified copying are insufficient as a matter of law to plausibly plead a substantial similarity between *Instafamous* and HBO's shows at issue here. See Peter F. Gaito Arch., 602 F.3d at 69 (affirming dismissal of copyright claim "because plaintiffs have failed to allege that a substantial similarity exists between defendants' work and the

protectible elements of plaintiffs'" (quotation marks, citation, and alterations omitted)).

Accordingly, Count I is **DISMISSED**.

### 4. *Statutory Damages and Attorney's Fees*

On his copyright infringement claim, Piuggi requests statutory damages, attorney's fees, and costs under 17 U.S.C. §§ 504 and 505. (See Compl. ¶¶ 83-84). Defendants argue that Piuggi's belated registration of his copyright precludes him from seeking any such award. (See Second Mot. at 2-3; Reply at 11.) Since the Court dismisses Piuggi's copyright claim, it need not decide whether Piuggi is entitled to statutory damages and attorney's fees under the Copyright Act. Nevertheless, because Piuggi requests leave to amend the Complaint should the Court grant the motions to dismiss (see Second Opp. at 9), the Court exercises its discretion to reach this issue in order to decide whether amendment would be futile. See Acticon AG v. China N. E. Petroleum Holdings Ltd., 615 F. App'x 44, 46 (2d Cir. 2015) ("Where amendment would be futile, denial of leave to amend is proper." (alteration omitted) (quoting In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2005)).

It is clear from the face of the Complaint that Piuggi is ineligible for an award of statutory damages and attorney's fees. The Copyright Act provides that "no award of statutory

damages or attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412. Here, Piuggi registered his copyright in *Instafamous* more than a year after *Fake Famous* and *FBOY Island* were released. The effective date of Piuggi's copyright registration is December 13, 2022 (see Dkt. No. 8-2, Compl. Ex. B) — more than a year after the allegedly infringing acts began.[16] Piuggi argues that he is nonetheless entitled to statutory damages and attorney's fees because Defendants "continued to produce infringing material" after he had registered *Instafamous* is unavailing. But it is well-established that "[e]ven 'where the alleged infringement begins before registration and continues after registration, statutory damages and attorney fees are still unavailable.'" Solid Oak Sketches, LLC v. 2K Games, Inc., No. 16 Civ. 724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016) (alteration omitted) (quoting Argentto Sys., Inc. v. Subin Assocs., LLP, No. 10 Civ. 8174, 2011 WL 2534896, at *2 (S.D.N.Y. June 24, 2011)). Accordingly, the Court finds that Piuggi is precluded from seeking statutory damages or attorney's fees under the Copyright Act. And because Piuggi

---

[16] As alleged, Defendants' infringing acts began on January 21, 2021 (when *Fake Famous*'s trailer was released) and July 29, 2021 (when *FBOY Island* was released). (Compl. ¶¶ 32, 66.)

is ineligible, the Court denies his request for leave to amend this issue as futile.

### B.   **Breach of Contract**

Next, the Court dismisses Piuggi's breach of contract claim against Grand Street and GFY as preempted by the Copyright Act. Piuggi alleges that Grand Street and GFY breached their NDAs by sharing his ideas for *Instafamous* with WBD (see Compl. ¶¶ 29, 74-75, 79, 89), and that GFY breached an "implied contract" to begin development on *Instafamous* (id. ¶¶ 39, 41, 89). To state a claim for breach of contract under New York law, a plaintiff must plead the following elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). "To plead these elements, 'a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.'" Id. at 189 (quoting Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)). "Moreover, 'stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract.'" Id. (alteration omitted) (quoting

Berman v. Sugo L.L.C., 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).

Defendants argue that Piuggi's breach of contract claim is preempted by the Copyright Act. (See First Mot. at 3.) Section 301 of the Copyright Act expressly preempts any state law claim asserting rights that are equivalent to rights protected by the Copyright Act. See 17 U.S.C. § 301(a); see also Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 309 (2d Cir. 2004) (holding a state law claim that is preempted by the Copyright Act must be dismissed for failure to state a claim); Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012). Defendants contend that Piuggi's contract claim is predicated on their alleged appropriation of his copyrighted work, which renders his contract claim "coextensive" with his copyright claim. (First Mot. at 3.) Determining whether breach of contract claims are preempted by the Copyright Act has proven especially challenging. See Universal Instruments Corp. v. Micro Systems Engineering, Inc., 924 F.3d 32, 48 (2d Cir. 2019) ("[P]reemption cannot be avoided simply by labeling a claim 'breach of contract.'" (quoting Forest Park, 683 F.3d at 432)). "[W]hether contract claims are preempted by the Copyright Act does not lend itself to a bright-line rule" but requires instead a case-specific inquiry. Canal+ Image UK

Ltd. v. Lutvak, 773 F. Supp. 2d 419, 443-444 (S.D.N.Y. 2011);
see ML Genius Holdings LLC v. Google LLC, No. 20-3113, 2022
WL 710744, at *4 (2d Cir. Mar. 10, 2022) (rejecting the idea
of a "per se rule" for preemption of contract claim as
inconsistent with the "holistic" approach required by
precedent) cert. denied, 143 S. Ct. 2658 (2023). "[C]ourts
in this district have continued to disagree how to analyze
preemption of breach of contract claims." Canal+, 773 F. Supp.
2d at 441-42 (quoting BanxCorp v. Costco Wholesale Corp., 723
F. Supp. 2d 596, 614 (S.D.N.Y. 2010)); see id. at 442 n.5
(compiling cases on both sides of this split and noting the
federal "Courts of Appeals are also divided on this issue");
Dow Jones & Co., Inc. v. Juwai Ltd., No. 21 Civ. 7284, 2023
WL 2561588, at *7-8 (S.D.N.Y. Mar. 17, 2023) (noting there
remains widespread "disagreement among the district courts in
this Circuit" on how to apply the equivalency requirement to
breach of contract claims, "with courts reaching divergent
conclusions").

Piuggi offers no guidance on this thorny question. In
fact, he does not mention preemption at all in his opposition
papers - arguing only that he plausibly alleged Grand Street
and GFY breached their NDAs. (See First Opp. at 4-5.)
"Numerous courts in this District have held that a party's
failure to address an issue in its response to a Rule 12(b)(6)

46

motion 'amounts to a concession or waiver of the argument.'" Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021) (quotation marks and citation omitted); see First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 392–393 & n.116 (S.D.N.Y. 2002) (considering argument waived where not addressed in opposition brief); Cole v. Blackwell Fuller Music Publ'g, LLC, No. 16 Civ. 7014, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) (collecting cases). By failing to respond to Defendants' preemption argument, Piuggi has waived any argument that his breach of contract claim is not preempted.

As for Piuggi's claim for breach of an implied contract, dismissal would still be warranted even if it were not preempted because Piuggi fails to allege that GFY breached any obligations to him. Under New York law, an implied contract "may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc., No. 23 Civ. 2349, 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 506–07 (2d Cir. 2009)). "An implied contract requires the same elements as an express contract, including consideration, mutual assent, legal

capacity and legal subject matter." Id. (citing Maas v. Cornell Univ., 721 N.E.2d 966, 970 (N.Y. 1999)). "It also requires a showing that there was a 'meeting of the minds.'" Id. (quoting I.G. Second Generation Partners, L.P. v. Duane Reade, 793 N.Y.S.2d 379, 382 (N.Y. App. Div. 2005)).

Here, Piuggi fails to allege formation of an implied contract between him and GFY. Piuggi's only allegations are that "entered into [an] implied contract with GFY" by paying a $2,500 "good-faith deposit for the first phase of the development of Instafamous," (Compl. ¶¶ 39, 41), and that GFY "breached its promises . . . [b]y failing to fulfill the terms of the oral agreement," (Compl. ¶ 89). But "[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." Berman, 580 F. Supp. 2d at 202. Because he does not identify a breach of any specific contractual obligations of that implied contract, Piuggi has "failed to allege the first element of a contract claim: an enforceable agreement to do what [Piuggi] alleges [Defendant] failed to do." Ancile Inv. Co. v. Archer Daniels Midland Co., 784 F. Supp. 2d 296, 304-05 (S.D.N.Y. 2011) (dismissing breach of implied contract claim for the complaint "d[id] not allege any valid contractual obligation that Defendant breached"); see Yodice v. Touro Coll. & Univ. Sys., No. 21 Civ. 2026, 2021 WL 5140058, at *3 (S.D.N.Y. Nov.

4, 2021) ("Because the complaint fails to allege specific promises sufficient to form an implied contract, [plaintiff's] breach of contract claims are dismissed."); accord <u>Haskins v. Symantec Corp.</u>, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of claim for breach of an implied contract where plaintiff failed to allege "the contract's terms"). And even if Piuggi had sufficiently alleged he and GFY entered into an implied contract, his failure to allege which contractual obligations GFY breached or how GFY breached them would still require dismissal. <u>See Ellington Credit Fund</u>, 837 F. Supp. 2d at 188-89 (noting plaintiffs must "identify what provisions of the contract were breached"); <u>see</u>, <u>e.g.</u>, <u>Wolff</u>, 171 F. Supp. 2d at 358 (dismissing breach of contract claim because complaint failed to identify "the contractual provision allegedly breached, or the nature of the breach"); <u>Shah v. Wilco Systems, Inc.</u>, 126 F. Supp.2d 641, 653 (S.D.N.Y. 2000) (same).[17]

Accordingly, Count II is **DISMISSED**.

### C.   <u>Implied Covenant</u>

Piuggi's implied covenant claim (against GFY only) must also be dismissed, because it is duplicative of his breach of

---

[17] Piuggi's mention of an "oral agreement" appears to refer to the alleged "implied contract." But, to the extent Piuggi is referring to separate contracts, the Court dismisses the breach of contract claim as it concerns the oral agreement for the same reasons.

contract claim. New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); see Xiaolu Peter Yu v. Vassar Coll., 97 F. Supp. 3d 448, 482 (S.D.N.Y. 2015). "Consequently, a breach of the implied covenant of good faith claim can survive a motion to dismiss only if it is based on allegations different from those underlying the accompanying breach of contract claim." ARI & Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (quotation marks omitted). Defendants argue that Piuggi "does not identify any alleged breach of the implied covenant that is distinguishable from the alleged breach of contract." (Second Mot. at 4-5.)

The Court finds that the Piuggi's implied covenant claim is based on the same factual allegations as his breach of contract claim. The only allegation unique to his implied covenant claim is his conclusory assertion that GFY "prevented [him] from enjoying the benefits of the Contract" and thereby "deprived [him] of [his] ability to receive the economic benefit from [his] relationship with GFY." (Compl. ¶ 97.) Of course, merely pleading the generic elements of an implied covenant claim does not suffice. See MBIA Ins. Co. v.

GMAC Mortg. LLC, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010)
("A good faith claim will be dismissed as redundant if it
merely pleads that defendant did not act in good faith in
performing its contractual obligations."); Twombly, 550 U.S.
at 555 ("[F]ormulaic recitation of the elements of a cause of
action will not do."). Piuggi's implied covenant claim is
therefore indistinguishable from his breach of contract claim
and must be dismissed.

Accordingly, Count III is **DISMISSED.**

### D.   Unjust Enrichment

Finally, Piuggi's unjust enrichment claim against GFY
must be dismissed as preempted by the Copyright Act. To state
a claim for unjust enrichment under New York law, a plaintiff
must plead that "(1) the other party was enriched, (2) at
[the plaintiff's] expense, and (3) that it is against equity
and good conscience to permit the other party to retain what
is sought to be recovered." I.C. ex rel. Solovsky v. Delta
Galil USA, 135 F. Supp. 3d 196, 218 (S.D.N.Y. 2015).

The Second Circuit "has interpreted [Section 301] as
directing a two-part analysis to determine whether a state
law claim is preempted" by the Copyright Act. In re Jackson,
972 F.3d 25, 42 (2d Cir. 2020). The first prong, also called
the "subject matter" requirement, "looks at the work that
would be affected by the plaintiff's exercise of a state-

created right[] and requires . . . that the work 'come within
the subject matter of copyright as specified by sections 102
and 103'" of the Copyright Act. Id. (quoting 17 U.S.C.
§ 301(a)). The first prong is easily satisfied here, as there
is no dispute that Piuggi's work falls squarely within "the
broad ambit of the subject matter categories" of the Copyright
Act. Briarpatch, 373 F.3d at 306; see 17 U.S.C. § 102(a)
(covering "original works of authorship fixed in any tangible
medium of expression," including "motion pictures and other
audiovisual works"); Universal City Studios v. T-Shirt
Gallery, 634 F. Supp. 1468, 1475 (S.D.N.Y. 1986) ("The first
condition under § 301 is clearly satisfied here because the
'Miami Vice' television series comes within the subject
matter of federal copyright."); see, e.g., A & E Telev.
Networks, 122 F. Supp. 3d at 159, 163-65 (stating that a
"treatment for a reality television show" is copyrightable);
Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d
1366, 1371 (2d Cir. 1993) (stating that both television series
and script fall within subject matter of federal copyright).
(See also First Opp. at 2 (asserting that Piuggi's work is
"clearly protectable under copyright law").)

The second requirement calls for a more searching
inquiry. Also known as the "equivalency requirement," the
second prong "looks at the right being asserted" over the

work at issue and requires "that the right be '*equivalent* to any of the exclusive rights within the *general scope of copyright* as specified by section 106" of the Copyright Act. Jackson, 972 F.3d at 43 (quoting 17 U.S.C. § 301(a)). The equivalency requirement "is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." Briarpatch, 373 F.3d at 305. The focus of the equivalency analysis is "whether the 'nature' of a state law action 'is qualitatively different from a copyright infringement claim.'" Jackson, 972 F.3d at 53. This entails scrutinizing the "gravamen" of the state law action to determine "what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716, 718 (2d Cir. 1992); see Jackson, 972 F.3d at 44 n.17 (describing the inquiry as "holistic").

Here, the Court finds that Piuggi's unjust enrichment claim fails and is thus preempted under application of the equivalency requirement. "Where the gravamen of an unjust enrichment claim is that defendants unjustly benefitted from unauthorized use of a work within the scope of the Copyright Act . . . the claim is preempted." Stanacard, LLC v. Rubard, LLC, No. 12 Civ. 5176, 2016 WL 462508, at *22 (S.D.N.Y. Feb.

3, 2016) (quotation marks omitted); see Einiger, 2014 WL
4494139, at *7 (observing that the "overwhelming majority of
courts in this circuit" have held that unjust enrichment
claims are preempted); see, e.g., Briarpatch, 373 F.3d at
306; Jackson, 972 F.3d at 44; Solovsky, 135 F. Supp. 3d at
218; see also Genius Media Grp. Inc. v. Google LLC, No. 19
Civ. 7279, 2020 WL 5553639, at *11 (E.D.N.Y. Aug. 10, 2020)
(collecting cases). The gravamen of Piuggi's claim is that
GFY was unjustly enriched at Piuggi's expense by its
unauthorized copying of Instafamous, which is clearly within
the scope of the Copyright Act. (See Compl. ¶ 104 ("GFY was
[unjustly] enriched by . . . secretly appropriating
'Instafamous,' a copyrighted work, for the use of Defendant
HBO's reality TV programs 'Fake Famous' and 'FBOY
Island.'").) Piuggi's unjust enrichment claim is therefore
squarely preempted. See Einiger, 2014 WL 4494139, at *7
(finding unjust enrichment claim preempted where plaintiff
alleged defendant unjustly benefited from unauthorized use of
plaintiff's copyrighted work); Stanacard, 2016 WL 462508, at
*22 (same).

Accordingly, Count IV is **DISMISSED**.

**E. Leave to Amend**

In the alternative to his argument that the Court should
deny the motions to dismiss, Piuggi requests that the Court

grant him leave to amend the Complaint. (See Second Opp. at 9.) Defendants argue that the request should be denied as futile, claiming that "nothing in [Piuggi's] affidavit or exhibits demonstrates that [he] can cure the fatal defects in his pleading." (First Reply at 6; see also Second Mot. at 11.) Rule 15 provides that a party "may amend its pleading once as a matter of course no later than . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which the "court should freely give . . . when justice so requires." Id. 15(a)(2); see Schatzki v. Weiser Capital Management, LLC, No. 10 Civ. 4685, 2015 WL 6206438, at *1 (S.D.N.Y. Oct. 16, 2015) (describing Rule 15 as setting out a "liberal standard"). "[I]t is within the sound discretion of the court whether to grant leave to amend." In re Alcon Shareholder Litig., 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (citation omitted). Nevertheless, "[i]t is rare that leave should be denied, especially when there has been no prior amendment." Iglesias v. HRA Pharma America, Inc., 22 Civ. 8398, 2023 WL 5277424, at *1 (S.D.N.Y. Aug. 16, 2023) (alterations omitted) (quoting Brown v. City of New York, No. 13 Civ. 6912, 2015 WL 7253874, at *1 (S.D.N.Y. Nov.

13, 2015)); see Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 833 (2d Cir. 2019) ("We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue."). Thus, leave should be "freely given" absent "good reason" — such as "futility, bad faith, undue delay, or undue prejudice to the opposing party." Jim v. Metro. Life. Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182-83 (1962)); see Homes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009); In re Alcon Shareholder Litig., 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010).

Consistent with that liberal standard, the Court grants Piuggi's request for leave to file an amended complaint, with the exception of his request for an award of statutory damages and attorney's fees under the Copyright Act. This would be Piuggi's first amendment to his Complaint, and the Court is "not convinced" at this stage "that 'the flaws in the Complaint are incurable,'" Brown v. New York City Transit Auth., No. 22 Civ. 02949, 2024 WL 1347283, at *15 (S.D.N.Y. Mar. 29, 2024) (alteration omitted) (quoting Kling v. World Health Org., 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021)). For instance, Piuggi may be able to plead a substantial similarity between his work and Defendants' works by properly attaching his Treatment to the amended complaint and by alleging

detailed and concrete comparisons between the Treatment and HBO's TV shows. <u>See</u> <u>Lambertini</u>, 2014 WL 4659266, at \*4 (granting leave to amend complaint after dismissing copyright claim for failure to demonstrate actual copying or substantial similarity). Piuggi is cautioned, however, that any amended complaint must remedy the pleading deficiencies noted in this Decision, which would include properly alleging the protectable elements of his work. If Defendants move to dismiss Piuggi's amended complaint, Piuggi may not assume that defects can be corrected by further amendments.

## IV. <u>ORDER</u>

For the reasons stated above, the Court hereby **GRANTS** the motions (Dkt. Nos. 22, 41) of defendants Grand Street Media Inc., Home Box Office Inc., Warner Bros. Discovery Inc., and Good for You Productions LLC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint (Dkt. No. 1) filed by plaintiff Jack Piuggi. The Court further **GRANTS** Piuggi leave to amend the Complaint. Piuggi may file an Amended Complaint within thirty (30) days of this Decision and Order. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 22 and 41.

**SO ORDERED.**

Dated:    2 July 2024
          New York, New York

_____
Victor Marrero
U.S.D.J.