USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JACK PIUGGI,

                    Plaintiff,

        - against -

GOOD FOR YOU PRODUCTIONS LLC, ET AL.,

                    Defendants.

---

**23-CV-3665 (VM)**

<u>**DECISION**</u> <u>**AND**</u>
<u>**ORDER**</u>

**VICTOR MARRERO, United States District Judge.**


        Plaintiff Jack Piuggi ("Piuggi") brings this action against defendants Grand Street Media Holdings Inc. ("Grand Street"), Home Box Office, Inc. ("HBO") and Good for You Productions, LLC ("GFY") (collectively, "Defendants"). In his First Amended Complaint (Dkt. No. 52, "FAC"), Piuggi alleges that Defendants conspired to steal his ideas for a reality television show called *Instafamous* and appropriated those ideas for two "similarly themed" TV shows called *Fake Famous* and *FBOY Island* that HBO released in 2021. Piuggi asserts claims for copyright infringement against all Defendants and breach of contract against Grand Street and GFY. Defendants move to dismiss these claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, the Court finds that Piuggi has failed to cure the

deficiencies in his Complaint, and Defendants' motion to dismiss is **GRANTED.**

## I.    BACKGROUND[1]

Piuggi founded Flipp Productions, LLC, in 2018 and conceived of *Instafamous* on or about January 2, 2021. (See FAC ¶¶ 5, 24-25.) Piuggi describes *Instafamous* in the FAC as a "documentary-style reality TV show incorporating an underlying faux-dating show competition" that "would both expose the superficiality of Instagram, 2020s dating culture, and reality TV, while simultaneously causing the contestants (former 'friends' of [Piuggi's]) to reveal their true and selfish nature." (Id. ¶¶ 25-26.) The details defining *Instafamous* are outlined in a 55-page document (the "Treatment"), which Piuggi appended to the FAC as Exhibit 1.[2] (See Id. ¶ 1; Dkt. No. 52-1.)

---

[1] Except as otherwise noted, the following background derives from the FAC. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth below in Section II.

[2] Piuggi refers to the Treatment as "approximately 40-pages" in the FAC (id. ¶ 28), but the document that he appended to the FAC as Exhibit 1 is 55 pages (see Dkt. No. 52-1). To the extent the Treatment conflicts with Piuggi's description of the same, the text of the Treatment controls. See Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2d Cir. 1986) ("[I]n copyright infringement cases the works themselves supersede and control contrary descriptions of them.").

A.    <u>THE TREATMENT</u>

The Treatment describes *Instafamous* as a documentary that follows the process of creating a reality show centered around Piuggi's life. (<u>See</u> Treatment, at 13.) The television series tracks Piuggi as he strives to become a famous Instagram influencer by handling his own marketing and launching a reality TV show. (<u>See</u> <u>id.</u> at 1.) At bottom, the Treatment states, *Instafamous* is "a show [about] turning Jack Piuggi into a brand." (<u>Id.</u> at 2.)

In addition to showcasing Piuggi's quest for fame, *Instafamous* also serves as a platform for him to find his wife by bringing his dating life into the workplace. (<u>See</u> <u>id.</u> at 2, 5.) Hence, the show begins with an audition to hire women to manage Piuggi's social media accounts. (<u>See</u> <u>id.</u> at 2-4.) However, unbeknownst to them, they are actually being recruited for Piuggi to date. (<u>See</u> <u>id.</u> at 4.) Piuggi would disclose the true intention behind the audition at the end of the first episode. (<u>Id.</u> at 7.) Piuggi's friends and family would serve as his board panel when auditioning women candidates. (<u>See</u> <u>id.</u> at 23.)

The Treatment outlines how *Instafamous* showcases Piuggi's emotional growth and the importance of feelings and relationships. (<u>See</u> <u>id.</u> at 13.) The series seeks to document Piuggi's experience attending therapy twice a week. (<u>See</u> <u>id.</u>

at 1-2.) Further, Piuggi intends to incorporate his family backstory into *Instafamous*, highlighting that his father ran a floor operation at the American Stock Exchange. (<u>See</u> <u>id.</u> at 20.)

Piuggi also outlines his vision for the structure and tone of *Instafamous*. He aims for an intense storyline mixed with slapstick comedy, similar to a "real-life sitcom." (<u>Id.</u> at 2.) The show alternates between shocking moments and interviews, evoking the feeling of being "famous and fake." (<u>Id.</u> at 6.) The show is designed to be a real-life romantic comedy set in the workplace, blending sitcom elements with Piuggi's family dynamics. (<u>See</u> <u>id.</u> at 40.)

### B.   THE ALLEGEDLY INFRINGING WORKS

Per Piuggi's description of the allegedly infringing works in the FAC, *Fake Famous* is a documentary that follows ordinary individuals as they are transformed into famous social media influencers.[3] (<u>See</u> FAC ¶ 72.) The documentary begins with a casting audition to determine who has the potential to become famous. (<u>See</u> <u>id.</u>) *Fake Famous* employs a team of experts to manage the selected participants' social media accounts, and features the cast members at home and the office. (<u>See</u> <u>id.</u>) The documentary reveals "the contrast

---

[3] Piuggi did not append copies of descriptions of *Fake Famous* or *FBOY Island* to the FAC, nor did he inform the Court where it could access the allegedly infringing works.

between the real and the staged, highlighting the fake aspects of social media fame," such as by featuring staged photoshoots in exotic locales. (Id.)

Piuggi describes *FBOY Island* as a reality television dating competition. (See id. ¶¶ 79-80.) The series features male suitors who are either "Nice Guys" or "FBoys." (Id. ¶ 101.) The "FBoys" are "self-proclaimed manipulator[s]" who participate in the show to win the cash prize rather than to find true love, and the female contestants must identify and eliminate them. (Id. ¶¶ 98-99.)

C.   PIUGGI PITCHES *INSTAFAMOUS*

On January 4, 2021, Piuggi pitched *Instafamous* to Lowell Freedman ("Freedman"), an owner and operator of Grand Street. (See id. ¶¶ 23, 27.) After Jesse Guma ("Guma"), a Grand Street partner, signed a non-disclosure agreement ("NDA"), Piuggi emailed the Treatment to Freedman and Guma. (See id. ¶¶ 27-28.) Freedman was previously involved with the HBO television show *The Sopranos*.[4] (See id. ¶ 53) Guma was the former

---

[4]   See *The Sopranos*, The Internet Movie Database (IMDb), https://www.imdb.com/title/tt0141842/(last visited Feb. 24, 2025) ("Production Companies[:] Home Box Office (HBO)."). These facts are subject to judicial notice. See Lewis v. M&T Bank, No. 21-933, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) ("Courts may take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2)); see, e.g., Walkie Check Prods., LLC v. ViacomCBS Inc., No. 21 Civ. 1214, 2022 WL 2306943, at *5 (S.D.N.Y. June 27, 2022) (taking judicial notice of search results on IMDb website). Piuggi does not plead that HBO produced *The Sopranos*.

Director of Development at Lightstone Entertainment and, according to Piuggi, "had business ties with Warner Bros." ("Warner"), HBO's parent company, and with STX, the production company ultimately credited for *FBOY Island*. (See id. ¶ 29.)

On January 14, 2021, Guma emailed Piuggi that Grand Street would pass on *Instafamous* but referred Piuggi to Jeff Cobelli ("Cobelli") of GFY, calling Cobelli his "production partner[]." (Id. ¶ 34.) On January 15, 2021, Cobelli signed an NDA with Piuggi. On January 19, 2021, Piuggi pitched *Instafamous* to Cobelli. (See id. ¶ 35.) Piuggi does not allege that he gave the Treatment to Cobelli.

On January 21, 2021, seventeen days after Piuggi sent Freedman and Guma the Treatment, and two days after he pitched *Instafamous* to Cobelli, the trailer for *Fake Famous* was released. (See id. ¶ 36.) That day, Piuggi called attorneys Rebel Roy Steiner Jr. ("Steiner") and Bennett Fidlow ("Fidlow"), senior partners of Loeb & Loeb LLC whom he retained when he created Flipp Productions. (See id. ¶ 37.) During the call, Steiner, who simultaneously represented HBO, "emphatically cautioned" Piuggi to be wary, saying that Grand

Street "are not who they say they are. They are HBO, and they are ripping you off."[5] (Id. ¶ 38.)

On February 1, 2021, Piuggi paid GFY $2,500 as a 50 percent "good-faith deposit for the first phase of the development of 'Instafamous,'" which specified Piuggi as the executive producer of the work. (Id. ¶ 43; see Dkt. No. 52-6.)

On February 2, 2021, twenty-nine days after Piuggi shared the Treatment with Freedman and Guma, and fourteen days after he pitched Instafamous to Cobelli, Fake Famous aired on HBO. (See id. ¶ 44.)

On February 3, 2021, Cobelli "alluded" to Piuggi during a phone call that he and his team "adopt certain editing styles and plot points that would later be revealed as part of 'Fake Famous.'"[6] (Id. ¶ 45.) Cobelli also told Piuggi that "[t]hey [the network] did not use their own resources . . . They did not have the idea," and that "you can film a show in hours and make it look like months." (Id. ¶¶ 46, 48.)

---

[5] Steiner and Fidlow do not represent Piuggi in the instant action. (See FAC ¶ 40.)

[6] In the FAC, Piuggi includes purported quotes attributed to Cobelli, the GFY team, and Garrett Morosky, Piuggi's actor friend who was cast in FBOY Island (see FAC ¶¶ 15, 50), citing to "Clip[s]" 1, 8, 12, 18, 28, 38, 40, 40.2, 41, 42, 43, 43.2, 45, 51, and 61. (See id. ¶¶ 46-48, 50, 58, 61-67). Piuggi asserts that citations to "Clip" "refer to recordings in [Piuggi's] possession which can be made available to the Court and Defendants in a method and manner directed or requested." (Id. ¶ 46 n.1.)

On February 5, 2021, Piuggi "told GFY that his friend Garret Morosky [("Morosky")] would be a good cast member for 'Instafamous.'" (Id. ¶ 49.) "[M]ere hours" later, Morosky received a call from a GFY casting agent informing him that he had been cast in *FBOY Island*. (Id. ¶ 50.) That night, Piuggi watched the *Fake Famous* trailer and "realized his intellectual property was being fed to HBO." (Id. ¶ 51.) Piuggi texted GFY to ask for credit on *Fake Famous*, but GFY denied a connection to *Fake Famous* or HBO. (See id. ¶ 53.)

On February 9, 2021, Piuggi called Steiner and Fidlow, who confirmed that they represented HBO. (See id. ¶¶ 55, 57.) Piuggi asked about the similarities between *Fake Famous* and *Instafamous*, and Steiner denied that HBO appropriated *Instafamous*, dismissed Piuggi's contention that HBO "would film and edit a documentary in two days," and "alluded that GFY and [Grand Street] could very likely steal [Piuggi's] intellectual property." (Id. ¶ 56.)

On February 10, 2021, Piuggi had a call with GFY and learned that the company refused to sign the contract. (See id. ¶ 58.) During that call, Cobelli stated that a production company could "film in [two] days and make it look like it took a year" and that the editing process could last one-to-two months. (Id.)

On March 26, 2021, Cobelli told Piuggi during a phone call that he had shared information about *Instafamous* with Chris Lewick ("Lewick"), a camera operator for *American Chopper*, a Warner-owned brand. (See id. ¶ 61.) Cobelli also explained that pitching to HBO and Discovery (both Warner-owned networks) is only possible by "knowing someone who knows someone." (Id. ¶ 65.) Cobelli purportedly "confirmed . . . that there is a direct connection between himself (GFY) and Warner via [Mark] Rooney, Maurice Freedman, and Grand Street." (Id. ¶ 66.) Cobelli also implied that TV networks do not want too many production companies attached to a project because the networks do not want to split profits. (See id.)

On April 8, 2021, Piuggi confronted Cobelli about the fact that a video set was filming in Piuggi's hometown, at an "exact location" Piuggi recommended for *Instafamous*. (Id. ¶ 67.) Piuggi does not allege that *FBOY Island* or *Fake Famous* filmed in his hometown, and Piuggi does not plead which production company was filming. In the Treatment, Piuggi states that he grew up in Locust Valley, Nassau County, New York. (See Treatment, at 32.)

On April 19, 2021, Morosky called Piuggi to tell him "I just won your TV show," referencing *FBOY Island*. (FAC ¶ 68.) *FBOY Island* aired on July 29, 2021, approximately seven months after Piuggi shared the Treatment with Freedman and Guma, and

approximately six-and-a-half months after Piuggi pitched *Instafamous* to Cobelli. (<u>See</u> <u>id.</u>)

On December 13, 2022, Piuggi registered the Treatment with the United States Copyright Office. (<u>Id.</u> ¶ 33; <u>see</u> Dkt. No. 52-4.)

D.   <u>PROCEDURAL HISTORY</u>

Piuggi initiated this action on May 4, 2023, alleging one claim of copyright infringement pursuant to 17 U.S.C. § 501 against Grand Street, GFY, Warner, and HBO (the "Original Defendants"), one claim of breach of contract against Grand Street and GFY, one claim of breach of the implied covenant of good faith and fair dealing against GFY, and one claim of unjust enrichment against GFY. (<u>See</u> Complaint, "Compl.," Dkt. No. 8 ¶¶ 76-108.) The Original Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), with Grand Street, HBO, and Warner filing separate motions to dismiss, and GFY joining in Grant Street's motion. (<u>See</u> Dkt. Nos. 27-28, 32, 43-45, 47-48.)

On July 2, 2024, this Court granted the Original Defendants' motions to dismiss and granted Piuggi leave to amend within thirty days. (<u>See</u> Dkt. No. 51, "First Decision & Order," at 57.) The Court dismissed the copyright claim, finding that Piuggi failed to plausibly allege that the Original Defendants actually copied his work. (<u>See</u> <u>id.</u>

at 29.) Namely, Piuggi failed to plausibly allege that HBO – the entity that produced the allegedly infringing works – had access to the copyrighted material. (See id. at 23.) Regardless, Piuggi failed to show how the works were substantially similar because the elements that the Original Defendants allegedly copied from *Instafamous* were non-copyrightable "stock concepts" and "stock characters," and Piuggi did not demonstrate that his selection and arrangement of the stock concepts was original. (See id. at 35-37.) Moreover, Piuggi did not produce any copies of his original work, such that the Court was not able to compare the total concept and overall feel of *Instafamous* to the allegedly infringing works. (See id. at 39-40.) Furthermore, the Court found that Piuggi was ineligible for statutory damages and attorneys' fees under the Copyright Act because he registered his copyright in *Instafamous* after the alleged infringement occurred. (See id. at 42-43.)

Regarding the remaining claims, the Court dismissed Piuggi's breach of contract claim as preempted by the Copyright Act because Piuggi failed to address preemption in his opposition, thus waiving the argument. (See id. at 46-47.) Furthermore, the Court dismissed Piuggi's implied covenant claim against GFY as duplicative of his breach of contract claim. (See id. at 49-50.) Finally, the Court

11

dismissed the unjust enrichment claim as preempted by the Copyright Act. (See id. at 51.)

The Court granted Piuggi leave to amend his Complaint and instructed Piuggi that he "may be able to plead a substantial similarity between his work and [the Original] Defendants' works by properly attaching his Treatment to the amended complaint and by alleging detailed and concrete comparisons between the Treatment and HBO's TV shows." (Id. at 56-57.)

Piuggi filed his FAC on August 3, 2024.[7] (See Dkt. No. 52.) Piuggi brought one claim of copyright infringement against GFY, Grand Street, and HBO, seeking relief in "damages in an amount to be proven at trial," "recovery of Defendants' profits attributable to Defendants' infringing conduct," and "injunctive relief restraining and enjoining Defendants' ongoing infringing conduct."[8] (FAC ¶¶ 119-21; see id. ¶¶ 114-

---

[7] Given that Piuggi filed the FAC after the August 1, 2024, deadline, Defendants submitted a proposed judgment dismissing the FAC with prejudice for untimeliness. (See Dkt. No. 53.) Hence, the Court ordered Piuggi to show cause as to why the FAC should not be dismissed. (See Dkt. No. 54.) In response, Piuggi's counsel filed a declaration explaining that it had "miscalculated the deadline" by one day, believing it to be August 2, 2024, and that it had "technical issues" when attempting to file the exhibits to the FAC, which delayed the filing until August 3, 2024. (Dkt. No. 56.) Finding that Piuggi's counsel's untimeliness was "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B), the Court denied Defendants' proposed judgment, granted Piuggi's request for an extension to file the FAC, and ordered Defendants to file an answer or otherwise respond to the FAC within twenty-one days. (Dkt. No. 57.)

[8] Although Piuggi listed Warner as a defendant in the header caption of the FAC, he did not name Warner as a defendant in the text. (See id. ¶¶ 5-17.) Hence, Piuggi has abandoned his claims against Warner. See Robinson v. City of New York, No. 10 Civ. 4608 JGK, 2012 WL 34077, at *1 (S.D.N.Y.

18.) Additionally, Piuggi brought one count of breach of contract against Grand Street and GFY, alleging that both breached their respective NDAs. (See id. ¶ 122-23.) As a result, Piuggi claims, he "has suffered and/or will suffer damages believed to be in excess of $15,000,000.00 dollars, exclusive of the damages to Plaintiff's goodwill and reputation." (Id. ¶ 124.)

Pursuant to this Court's Individual Rule II.B.1 ("Rule II.B.1"), on August 29, 2024, counsel for Warner and HBO and counsel for Grand Street sent separate letters to Piuggi's counsel identifying deficiencies in the FAC.[9] (See Dkt. Nos. 60, 61.) On September 5, 2024, Piuggi's counsel responded via a one-paragraph letter and a sworn affidavit of Piuggi (the "Piuggi Affidavit"). (See Dkt. Nos. 62, 62-1.) Individual Rule II.E.1 ("Rule II.E.1") instructs that affidavits "should contain concise statements attested to by the affiant on the basis of personal involvement or knowledge of pertinent facts," and that they "shall not be used as a vehicle for counsel to describe factual background or legal issues involved in the case." The Piuggi Affidavit, however,

---

Jan. 6, 2012) ("Because the plaintiff did not name any City defendants in his amended complaint and failed to file a second amended complaint naming any City defendants despite two opportunities to do so, he has abandoned his claims against the City defendants.").

[9] The letter informed Piuggi that Warner "presumes that [Piuggi] has dismissed his claims against [Warner] with prejudice" because "he did not name [Warner] as a defendant in his [FAC]." (Dkt. No. 60, at 1.)

contained legal arguments. (See Piuggi Affidavit ¶¶ 2, 6, 9.) Thus, the Court will not consider the Piuggi Affidavit. See Rule II.E.1. On September 11, 2024, Warner and HBO's counsel and Grand Street's counsel filed separate letters pursuant to this Court's Individual Rule II.B.2 ("Rule II.B.2") informing the Court that their contemplated motions to dismiss remained warranted. (See Dkt. Nos. 63, 64.)

On September 20, 2024, counsel for GFY filed a Rule II.B.1 letter demanding that Piuggi dismiss all claims against GFY with prejudice.[10] (See Dkt. No. 66.) Grand Street adopted Warner and HBO's arguments as set forth in their letter regarding the deficiencies of the copyright claim, and Grand Street's arguments as set forth in its letter regarding the deficiencies of the contractual breach claim. (See id.)

On September 23, 2024, the Court directed the parties to advise whether "they consent for the Court to deem the pre-motion letters to constitute a fully briefed motion to dismiss and rule on the basis of those letters." (Dkt. No. 68.) On September 30, 2024, Warner and Defendants consented to a ruling on the basis of the letters. (See Dkt. No. 69.) On

---

[10] Because GFY had not made any filings since before this Court's July 2, 2024, Decision and Order dismissing the Complaint, on September 20, 2024, the Court ordered GFY to show cause as to why the Court should not enter default judgment in favor of Piuggi. (See Dkt. No. 65.) That same day, GFY filed its Rule II.B.1 letter. (See Dkt. No. 66.)

October 1, 2024, Piuggi consented to the same. (<u>See</u> Dkt. No. 70.)

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct" — there is not "a probability requirement at the pleading stage." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556(quotations omitted)); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "In other words, a complaint should not be dismissed when the factual allegations sufficiently 'raise a right to relief above the speculative level.'" <u>Liboy v. Russ</u>, No. 22 Civ. 10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting <u>Twombly</u>, 550 U.S. at 555). In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally,

accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quotations and citation omitted).

### III. **DISCUSSION**

#### A.   THE COPYRIGHT INFRINGEMENT CLAIM

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Abdin v. CBS Broad. Inc., 971 F.3d 57, 66 (2d Cir. 2020) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]." Abdin, 971 F.3d at 66 (quoting Yurman Design, Inc. v. PAJ Inc., 262 F.3d 101, 110 (2d Cir. 2001)).

Piuggi has plausibly alleged ownership of a valid copyright by producing his Certificate of Copyright. (See Dkt. No 51, at 17; Dkt. No. 52-2.) Regarding the second element, Defendants argue that Piuggi has failed to plausibly

plead "actual copying" or "substantial similarity." (See Dkt. No. 60, at 1, 3.) For the reasons below, the Court concludes that Piuggi has failed to state a claim for copyright infringement because he has not adequately alleged actual copying or substantial similarities between the works.

### 1.    Actual Copying

Defendants argue that Piuggi has not plausibly alleged that HBO actually copied *Instafamous*. First, Defendants assert that it is implausible that HBO had access to and actually copied Instafamous in the timeline Piuggi proposes between pitching *Instafamous* and the premier of the HBO shows, as Piuggi shared the Treatment with Grand Street on January 4, 2021, and pitched *Instafamous* to GFY on January 19, 2021, and *Fake Famous* premiered on February 2, 2021, and *FBOY Island* premiered on July 29, 2021. (See Dkt. No. 60, at 1-2; Dkt. No. 61, at 1; FAC ¶¶ 27, 35, 44, 68.) Second, Defendants argue that Piuggi does not adequately allege that HBO had access to the *Instafamous* Treatment. (See Dkt. No. 60, at 2; Dkt. No. 61, at 1.) Because the Court accepts all factual allegations in the FAC as true and draws all reasonable inferences in Piuggi's favor, the Court declines to hold that Piuggi failed to plead actual copying based on his proposed timeline. See Goldstein, 516 F.3d at 56. The Court agrees,

however, that Piuggi failed to plausibly allege that HBO had access to the Treatment, as Piuggi relies on the same allegations that the Court found to be insufficient in the Complaint.

"Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial evidence that the defendants had access to the plaintiff's work." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327-28 (S.D.N.Y. 2021). "Because direct evidence of actual copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating [1] that the person who composed the defendant's work had access to the copyrighted material . . . and [2] that there are similarities between the two works that are probative of copying." Lewinson v. Henry Holt & Co., LLC, 659 F. Supp. 2d 547, 562 (S.D.N.Y. 2009) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (alteration omitted)).

"Access means that an alleged infringer had a 'reasonable possibility' — not simply a 'bare possibility' — of [accessing] the prior work." Jorgensen, 351 F.3d at 51 (quoting Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988)). Even at the pleading stage, "[a]ccess may not be inferred through mere speculation or conjecture." Id.

18

(quoting 4 Melville Nimmer & David Nimmer, Nimmer on Copyright § 13.02[A], at 13-19 to 13-20 (2002 ed.)).

Piuggi does not offer any direct evidence of copying in the FAC. Nor does he claim that he shared the Treatment with anyone at HBO, the company that "funded and produced" *Fake Famous* and *FBOY Island*. (FAC ¶ 7.) Rather, Piuggi alleges that he shared the Treatment with Guma and Freedman of Grand Street and that "GFY and [Grand Street] shared the contents of [the] Treatment" with the producers of *Fake Famous* and *FBOY Island*. (Id. ¶ 83; see id. ¶¶ 27-28.) Hence, Piuggi must plead a circumstantial case of actual copying by plausibly alleging "a particular chain of events . . . by which [HBO] might have gained access to the [copyrighted] work" through Grand Street or GFY. Clanton, 556 F. Supp. 3d at 328 (quotation omitted).

To support his contention that GFY and Grand Street shared the Treatment with HBO, Piuggi alleges that during a March 26, 2021, phone call, Cobelli of GFY "confirmed . . . that there is a direct connection between [GFY] and [Warner]" via Maurice Freedman (Freedman's brother), Mark Rooney (who introduced Piuggi to Maurice Freedman), and Grand Street. (FAC ¶ 66.) Specifically, Cobelli purportedly explained that Warner, HBO's parent company, operates as an independent contractor because "production companies partner via LLCs

19

and collectively as independent companies and 'production partners.'" (Id.) Piuggi does not provide additional details showing how Cobelli "confirmed" the "direct connection" between GFY and Warner, let alone the connection between GFY and HBO.

Further, to bolster his contention that HBO had access to his intellectual property, Piuggi alleges the following links between GFY and Grand Street, and Warner and HBO. First, that Freedman of Grand Street was involved in *The Sopranos*, a television show produced by HBO.[11] (See id. ¶ 53). Second, that Guma of Grand Street previously partnered with Warner, HBO's parent company, and STX, the production company ultimately credited for *FBOY Island*. (See id. ¶¶ 29, 53.) Third, that Mark Rooney, who introduced Piuggi to Maurice Freedman (Freedman's brother), who in turn introduced Piuggi to Freedman, is associated with TLR Music Group, a "current partner" of Warner. (Id. ¶ 54; see id. ¶¶ 22-23.) Fourth, that Piuggi's former counsel Steiner and Fidlow simultaneously represented HBO during their representation of Piuggi. (See id. ¶ 57.) Finally, that Cobelli shared Piuggi's "concept" for *Instafamous* with Lewick, a camera operator for *American Chopper*, a Warner-owned brand, before

---

[11] See *The Sopranos*, IMDb, https://www.imdb.com/title/tt0141842/(last visited Feb. 24, 2025).

a March 26, 2021, call. (Id. ¶¶ 61-62.) Piuggi does not allege that he shared the Treatment with Cobelli, Mark Rooney, Steiner, or Fidlow, or that Cobelli shared the Treatment with Lewick.

Although a "plaintiff may establish access through third parties connected to both a plaintiff and a defendant, . . . [i]n such a case, an inference of access requires more than a mere allegation that someone known to the defendant possessed the work in question." Feuer-Goldstein, Inc. v. Michael Hill Franchise Pty. Ltd., No. 16 Civ. 9987, 2019 WL 1382341, at *6 (S.D.N.Y. Mar. 27, 2019) (quotations omitted). "Access through an intermediary may be inferred if the intermediary 'has a close relationship with the infringer.'" Id. (quoting Lessem v. Taylor, 766 F. Supp. 2d 504, 508-09 (S.D.N.Y. 2011)). "Such a relationship exists, for example, if the intermediary 'supervises or works in the same department as the infringer or contributes creative ideas to the infringer.'" Id. (alteration omitted) (quoting Jorgensen, 351 F.3d at 53).

Rather than amending his Complaint to allege concrete intermediaries between individuals who possessed the Treatment — Freedman and Guma — and HBO, Piuggi relies on the same allegations that the Court found insufficient to plead access in its First Decision and Order. There, the

Court found that Mark Rooney's current association with Warner without an allegation that he had access to the Treatment, Freedman's past involvement in *The Sopranos*, and Guma's prior partnership with Warner were insufficient to plead access. (See Dkt. No. 51, at 26-27.) Further, the Court rejected the contention that Lewick was a plausible link to HBO because "Warner did not acquire Discovery Channel" — the network that produced *American Chopper*[12] — "until April 2022," which was "long after *American Chopper* had finished its run and HBO released *Fake Famous* and *FBOY Island*." (Dkt. No. 51, at 25.) Although Piuggi included in the FAC an allegation that the Warner merger "was not completed at the time of the infringement, [but that] it had been announced," (FAC ¶ 31), an announced merger is insufficient to plausibly allege third-party access. See Feuer-Goldstein, Inc., 2019 WL 1382341, at *6 (access requires that the "creators themselves, and not only an affiliated corporation, had access to the work that was allegedly copied" (quoting Clonus Assocs. v. Dreamworks, LLC, 457 F. Supp. 2d 432, 439 (S.D.N.Y. 2006)).

Although the Court did not address Steiner and Fidlow's representation of HBO in its First Decision and Order, Piuggi

---

[12] See *American Chopper: The Series*, IMDb, https://www.imdb.com/title/tt0364779/ (last visited February 24, 2025).

did not plead that he shared the Treatment with them. Similarly, Piuggi did not plead that Steiner and Fidlow had any connection with Freedman and Guma, the only individuals to whom Piuggi sent the Treatment. Hence, Steiner and Fidlow's representation of HBO without more is insufficient to plead access. See Jorgensen, 351 F.3d at 53 ("A court may infer that the alleged infringer had a reasonable possibility of access if the author *sent the copyrighted work* to a third party intermediary who has a close relationship with the infringer. (quoting Towler v. Sayles, 76 F.3d 579, 583 (4th Cir. 1996) (emphasis added)).

At bottom, Piuggi relies on the same allegations in the FAC as those the Court found insufficient to plead access in the Complaint, and Piuggi did not meaningfully make any amendments to bring his allegations beyond the realm of "theoretical possibilities." Poppington LLC v. Brooks, No. 20 Civ. 8616, 2022 WL 2121478, at *3 (S.D.N.Y. June 13, 2022).

## 2.    Substantial Similarity

Because Piuggi has failed to plead "access," the Court need not decide whether he has pleaded "substantial similarity." See Wager v. Littell, No. 12 Civ. 1292, 2013 WL 1234951, at *4 (S.D.N.Y. Mar. 26, 2013), aff'd, 549 F. App'x 32 (2d Cir. 2014). Even if Piuggi had plausibly alleged

23

access, however, the Court agrees with Defendants that Piuggi has not plausibly alleged that *Instafamous* and *Fake Famous* or *FBOY Island* are substantially similar.

"In most cases, the test for 'substantial similarity' is the so-called 'ordinary observer test' which inquires whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" Lewinson, 659 F. Supp. 2d at 564 (quoting Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) (alterations omitted)). But "[w]hen comparing works that contain both protectable and non-protectable elements," as here, courts in this Circuit "apply a 'more discerning ordinary observer test' by considering whether there is substantial similarity 'between those elements, and only those elements, that provide copyrightability to the allegedly infringed work.'" Id. at 564-65(quoting Boisson v. Banian, Ltd. 273 F.3d 262, 272 (2d Cir. 2001) (alterations omitted)). Hence, courts must "look to the total concept and feel of the protected work and the allegedly infringing work while also keeping in mind the distinction between a work's non-protectible elements and its selection, coordination, arrangement, and expression of those elements — which are protectible." Id. at 565 (quotations and alteration omitted).

"[C]opyright does not protect ideas; it protects only the author's particularized expression of the idea." <u>Mattel, Inc. v. Goldberger Doll Mfg. Co.</u>, 365 F.3d 133, 135-36 (2d Cir. 2004). An expression of an idea is particularized if the author uniquely "selected, coordinated, and arranged the elements of his . . . work." <u>Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.</u>, 602 F.3d 57, 64 (2d Cir. 2010) (quotation and citation omitted). Conversely, "certain literary or cinematographic elements are not protected even if they take the form of concrete expression." <u>Muller v. Twentieth Century Fox Film Corp.</u>, 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011) (quotation omitted). For example, copyright does not protect "stock themes" that are "commonly linked to a particular genre." <u>Abdin</u>, 971 F.3d at 70-71 (quotation and citation omitted). Neither does copyright protect "scènes à faire" - <i>i.e.</i>, "elements of a work that are indispensable, or at least standard, in the treatment of a given topic," such as "cowboys, bank robbers, and shootouts in stories of the American West." <u>Zalewski v. Cicero Builder Dev., Inc.</u>, 754 F.3d 95, 102 (2d Cir. 2014) (quotation and citation omitted).

When this Court held in its First Decision and Order that Piuggi failed to demonstrate a substantial similarity between <i>Instafamous</i> and <i>Fake Famous</i> or <i>FBOY Island</i>, the Court observed that "the vagueness of Piuggi's allegations is

compounded by his failure to produce any copies of his original work." (Dkt. No. 51, at 39.) Heeding the Court's instruction, Piuggi appended the Treatment to the FAC as Exhibit 1. (<u>See</u> Dkt. No. 52-1.) Comparing the Treatment to Piuggi's descriptions of *Fake Famous* and *FBOY Island* lays bare, however, that *Instafamous* is not substantially similar to either HBO show, as the "total concept and feel" of the works are vastly different.[13] <u>Lewinson</u>, 659 F. Supp. 2d at 565.

The Treatment describes *Instafamous* as a show about "turning Jack Piuggi [] into a brand," with Piuggi as the star and central theme. (Treatment, at 2.) While both *Instafamous* and *Fake Famous* portray non-celebrities attempting to become famous through social media, *Instafamous* follows Piuggi alone as he "build[s] [his] production company through the assistance of family and friends." (<u>Id.</u> at 17.) *Fake Famous* employs "a team of experts" to "manag[e] the social media accounts of the participants," (FAC ¶ 72), but *Instafamous* uses a team of "hot assistants" recruited "for

---

[13] Although in "copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them,'" Piuggi has not made *Fake Famous* or *FBOY Island* available to the Court so that the Court may compare the Treatment directly to the HBO shows, rather than to Piuggi's descriptions of them. <u>Gaito Architecture</u>, 602 F.3d at 64 (quoting <u>Walker</u>, 784 F.2d at 52). But even comparing the Treatment to Piuggi's descriptions, the Court finds that Piuggi has failed to plead substantial similarity. (<u>See</u> Sections I.A-B describing the Treatment and Piuggi's descriptions of the HBO shows.)

[Piuggi] to date, unknowingly to them" (Treatment, at 1, 4). *Fake Famous* is a "documentary" (FAC ¶ 72), while *Instafamous* would "watch like a family home video," and be a "rom/com at work, and sit/com with [Piuggi's] family" (Treatment, at 11, 40). Though both *Instafamous* and *Fake Famous* include auditions, the auditions in *Instafamous* are to hire "pretty girls" to manage Piuggi's social media accounts and "for [Piuggi] to date" (Treatment, at 2, 4), whereas the auditions in *Fake Famous* are to determine the prospective cast members' "potential to become famous influencers" (FAC ¶ 72).

Likewise, the similarities between *FBOY Island* and *Fake Famous* end with the inclusion of a dating element. *FBOY Island* is a dating competition with multiple "female contestants and male suitors," where the male suitors are either "Nice Guys" or "FBoys." (Id. ¶ 101.) The "FBoys" participate in the show "for a cash prize rather than genuine romantic connection," and the female contestants must "identify and eliminate" them. (Id. ¶¶ 98-99.) Piuggi contends that "the format where men are secretly appearing not for love but for competition or a cash prize, appears in [the] Treatment" (id. ¶ 80 (citing Treatment, at 8)), but the Treatment does not mention such a dating competition. (See Treatment, at 8.)

Moreover, *Instafamous* does not include a dating competition throughout the series, but rather "auditions" at

the show's outset to recruit "pretty girls" to work at Piuggi's production company who would also be "for [Piuggi] to date, unknowingly to them." (Treatment, at 2, 4.) Piuggi's goal was that one of those women would become his wife, such that *Instafamous* would "be the beginning of [Piuggi's] family history book." (Id. at 13; see id. at 2.) After Piuggi got engaged, *Instafamous* would "take[] on more of a family vibe and . . . is simply documenting [Piuggi's] life with [his] family." (Id. at 27.)

Although Piuggi listed alleged similarities between *Instafamous* and the HBO shows in the FAC (see FAC ¶ 72), those purported similarities are largely "'stock concepts' [that] are common to reality dating shows and are 'unprotectable in and of themselves,'" (Dkt. 51, at 35 (quoting Castorina v. Spike Cable Networks, Inc., 784 F. Supp. 2d 107, 111 (E.D.N.Y. 2011)), such as "*American Idol*-style auditions," "documenting the journey of contestants," "capturing behind the scenes," and shooting cast members in "their personal environments." (FAC ¶ 72.) Regardless, "the works themselves supersede and control contrary descriptions of them," Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2d Cir. 1986), and, as explained above, a comparison of the Treatment to Piuggi's descriptions of *Fake Famous* and *FBOY Island* shows that those works are not substantially similar.

Accordingly, because Piuggi's FAC fails to plead that HBO had access to the Treatment, and because the Treatment's "total concept and feel" is not substantially similar to *Fake Famous* or *FBOY Island*, Count I is hereby **DISMISSED**.

### B.   THE BREACH OF CONTRACT CLAIM

Piuggi brings a breach of contract claim against Grand Street and GFY, alleging that they breached the NDAs they entered with Piuggi. (See FAC ¶¶ 122-24; Dkt. Nos. 52-2, 52-3.) Piuggi does not explicitly state how Grand Street breached its NDA, which Freedman signed. (See FAC ¶ 28.) Piuggi implies that Grand Street breached its NDA by sharing the "Treatment with producers for [Warner's] *Fake Famous* and *FBOY Island*." (Id. ¶ 83.) Piuggi alleges that GFY breached its NDA, which Cobelli signed (see id. ¶ 35), when Cobelli "shared information about [Piuggi's] show . . . with [Lewick]." (Id. ¶ 62.) Piuggi also claims that "Cobelli later admitted again of breaching the NDA" by telling Piuggi that "'someone can take a concept and use it to make an adaptation'" without further explanation of how this "admission" breached the NDA. (Id. ¶ 63.)

Grand Street and GFY argue that the breach of contract claim is frivolous because it is "preempted by Section 301 of the Copyright Act," as the claim "alleges unauthorized publication or distribution of [Piuggi's] work." (Dkt.

No. 61, at 1; see Dkt. No. 66.) Regardless, Grand Street and GFY assert, Piuggi has not alleged "any breach of the [NDAs]," relying on the same "deficient access and substantial similarity allegations that fail to support his copyright claim." (Dkt. No. 61, at 1-2.)

To state a claim for breach of contract under New York law, a plaintiff must plead: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). "To plead these elements, 'a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue.'" Id. at 189 (quoting Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)). Further, "[c]onclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017) (quotation omitted). Finally, at the motion to dismiss stage, a plaintiff must "plead allegations from which damages attributable to defendant's [breach] might be reasonably inferred." Bancorp Servs., LLC v. Am. Gen. Life

Ins. Co., No. 14 Civ. 9687 (VEC), 2016 WL 4916969, at *6 (S.D.N.Y. Feb. 11, 2016) (quotation and citation omitted).

Section 301 of the Copyright Act expressly preempts any state law claim asserting rights that are equivalent to rights protected by the Copyright Act. See 17 U.S.C. § 301(a); see also Briarpatch Ltd., L.P v. Phoenix Pictures, Inc., 373 F.3d 296, 309 (2d Cir. 2004) (state law claims preempted by the Copyright Act should be dismissed for failure to state a claim). "[W]hether contract claims are preempted by the Copyright Act does not lend itself to a bright-line rule. Rather, whether a given contractual promise renders a claim qualitatively different than a copyright claim must depend on what the promise is." Canal+ Image UK 46 Ltd. v. Lutvak, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011). "[C]ourts in this district have continued to disagree [regarding] how to analyze preemption of breach of contract claims." Id. at 441 (quotation and citation omitted). Some hold that "the promise itself" saves "a contract claim from preemption." Id. at 442 (quotation and citation omitted). Others hold that "a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display)." Id. at 443 (quotation and citation omitted)

31

(compiling cases); see id. at 442 n.5 ("Other Courts of Appeals are also divided on this issue"); Dow Jones & Co., Inc. v. Juwai Ltd., No. 21 Civ. 7284, 2023 WL 2561588, at *7 (S.D.N.Y. Mar. 17, 2023) (there remains "disagreement among the district courts in this Circuit" on whether a promise "is sufficient to establish an extra element") (quotation omitted).

When this Court dismissed the Complaint, it held that Piuggi "waived any argument that his breach of contract claim is not preempted" because he "fail[ed] to respond to Defendants' preemption argument" in his opposition. (Dkt. No. 51, at 47.) See Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 318 n.10 (S.D.N.Y. 2021) ("Numerous courts in this District have held that a party's failure to address an issue in its response to a Rule 12(b)(6) motion amounts to a concession or waiver of the argument.") (quotation and citation omitted). Despite this Court's prior holding, Piuggi again failed to respond to Grand Street and GFY's argument that his breach of contract "claim remains preempted by Section 301 of the Copyright Act." (Dkt. No. 61, at 1.) Rather, Piuggi stated only that the FAC "sets forth a plausible series of events that resulted in the theft of [Piuggi's] intellectual property." (Dkt. No. 62.) "By failing to respond to [Grand Street and GFY's] preemption argument,

Piuggi has waived any argument that his breach of contract claim is not preempted." (Dkt. No. 51, at 47.) Hence, for the reasons discussed in the Court's First Decision and Order, Piuggi's breach of contract claim is preempted.

Putting preemption aside, dismissal would still be warranted because Piuggi has failed to state a breach of contract claim against Grand Street or GFY. First, Piuggi does not plead which provisions of their respective NDAs Grand Street and GFY breached. Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 371 (S.D.N.Y. 2016) (dismissing breach of contract claim because "Nungesser again fails to identify a provision of the policy that Columbia has violated"). (See FAC ¶¶ 2, 61, 63.)

Regarding the breach of contract claim against Grand Street, Piuggi does not specifically plead how Grand Street breached its NDA, stating only that Grand Street "breached [its] promises to [Piuggi] under the NDA" by "failing to oblige the [NDA]." (Id. ¶ 123.) Hence, Piuggi impermissibly pleads "in a conclusory manner that [the NDA] was breached." Ellington Credit Fund, 837 F. Supp. 2d at 189; see also Harbor Distrib. Corp. v. GTE Operations Support Inc., 176 F. Supp. 3d 204, 215 (E.D.N.Y. 2016) (dismissing breach of contract claim because plaintiff "conclusorily asserts" defendants breached lease provision without "identify[ing] any further

factual support"). To the extent that Piuggi relies on the allegations that Grand Street shared the "Treatment with producers for [Warner's] *Fake Famous* and *FBOY Island*," (FAC ¶ 83), the Court explained above in Section III.A.1 that Piuggi has not come close to alleging a "particular chain of events" to support his contention that Grand Street shared the Treatment with HBO. <u>Clanton</u>, 556 F. Supp. 3d at 328.

Finally, Piuggi fails to plead damages resulting from Grand Street's or GFY's alleged breaches. A mere "allegation that defendant 'suffered damages' without particular facts as to how [he] was damaged does not satisfy <u>Twombly</u> and <u>Iqbal</u>." <u>Int'l Bus. Machines Corp. v. Dale</u>, No. 11 Civ. 951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). Even assuming that Cobelli "shar[ing] information about [Piuggi's] show . . . with [Lewick]" breached GFY's NDA and was not preempted by the Copyright Act, Piuggi does not explain how this breach harmed him. (FAC ¶ 61.) To the extent that Piuggi's allegations of harm are that Lewick in turn shared the information with HBO, this theory is not sufficiently plausible. (<u>See</u> Section III.A.1, <u>supra</u>.)

Accordingly, because Piuggi waived the copyright preemption argument and failed to state a claim for breach of contract, Count II is **DISMISSED**.

C.    LEAVE TO AMEND

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). A court may properly deny leave to amend, however, in cases of "repeated failure to cure deficiencies by amendments previously allowed, [or] futility of amendment." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

The Court denies leave to amend the copyright claim because Piuggi's "submissions to date have left the Court with little confidence in [his] ability to successfully replead a claim" against any defendant. Thomas v. Twitter Corp. Off., No. 22 Civ. 5341 (KPF), 2023 WL 8452200, at *9 (S.D.N.Y. Dec. 6, 2023). Piuggi's inclusion of the Treatment with his FAC reveals that *Instafamous* is not similar, let alone substantially similar, to *Fake Famous* or *FBOY Island*. (See Section III.A.2, supra.) Hence, even if Piuggi could plead a concrete "chain of events" by which HBO had access to the Treatment, an amended claim for copyright infringement

would fail the substantial similarity test. <u>Clanton</u>, 556 F. Supp. 3d at 328.

The copyright claim is Piuggi's sole federal claim. <u>See</u> 28 U.S.C. § 1331. Regarding the breach of contract claim, Piuggi, Grand Street, and GFY are not diverse, as all are citizens of New York. <u>See</u> 28 U.S.C. § 1332. (<u>See</u> FAC ¶¶ 5, 8-12.) Therefore, even if an amendment to the breach of contract claim against Grand Street and GFY could cure its deficiencies, the amendment would be futile because the Court would "decline to exercise supplemental jurisdiction" over the contractual breach claim. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Chan v. Reno</u>, 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis.")

Accordingly, because further amendment of the FAC would be futile, the Court declines to grant leave to amend.

*** 

In sum, the Court finds that Piuggi failed to state a claim for copyright infringement against any defendant because he did not set forth a plausible chain of events by which HBO had access to the Treatment. Regardless, Piuggi failed to plead substantial similarity between *Instafamous*

36

and *Fake Famous* or *FBOY Island*, as a review of the Treatment reveals that each show's concept and feel differs significantly. Piuggi failed to state a claim for breach of contract against Grand Street or GFY because he waived the argument that the Copyright Act does not preempt the contract claim. Nevertheless, Piuggi failed to state a claim for contractual breach under New York law because he did not plead which provisions Grand Street or GFY breached, damages, or how, specifically, Grand Street breached its NDA, apart from relying on the same allegations underpinning the copyright claim that the Court found to be implausible. Finally, the Court denies leave to amend because any amended copyright claim would fail the substantial similarity test. Without the copyright claim, the Court would not have supplemental jurisdiction over the breach of contract claim, such that an amendment to the contract claim would be futile.

### IV.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendants Warner Bros. Discovery, Inc., Good For You Productions, LLC, Grand Street Media Inc., and Home Box Office, Inc. to dismiss the complaint of plaintiff Jack Piuggi in this action (see Dkt. Nos. 60, 61, 66, 69-70) is **GRANTED**. It is further

**ORDERED** that Counts I and II of the amended complaint herein are **DISMISSED WITH PREJUDICE.** Because there are no remaining issues before the Court, the Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:     24 February 2025
           New York, New York

_____
                              Victor Marrero
                                U.S.D.J.