USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/20/26__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JACK PIUGGI,

                    Plaintiff,

        - against -

GOOD FOR YOU PRODUCTIONS LLC, ET AL.,

                    Defendants.

---

**23-CV-3665 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Jack Piuggi ("Piuggi") brought this action against defendants Good For You Productions LLC ("GFY"), Grand Street Media Holdings Inc. ("Grand Street"), Home Box Office Inc. ("HBO"), and Warner Bros. Discovery, Inc. ("Warner").[1] In his First Amended Complaint, Piuggi asserted claims for copyright infringement against all Defendants and breach of contract against Grand Street and GFY. (See "FAC", Dkt. No. 52.) In a previous Decision and Order, the Court granted Defendants' motion to dismiss in full Piuggi's First Amended Complaint. (See Dkt. No. 71.) Grand Street and WBD now move for an award of attorneys' fees pursuant to Section 505 of the Copyright Act ("Section 505"). (See Dkt. Nos. 73, 76.) In addition, Grand Street moves for sanctions pursuant

---

[1] HBO is a wholly owned subsidiary of Warner. Accordingly, for purposes of this Decision and Order, the Court uses "WBD" to refer to both HBO and Warner. Additionally, because GFY has not brought a motion for attorneys' fees, the Court uses "Defendants" in this Decision and Order to refer to WBD and Grand Street.

to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). (See Dkt. No. 73.) For the reasons discussed below, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

The Court presumes the parties' familiarity with the facts of this case, which are explained in greater detail in the Court's prior decision and order granting Defendants' motion to dismiss. (See Dkt. No. 71.) The Court therefore provides a summary of the relevant facts.

On or about January 2, 2021, Piuggi conceived of *Instafamous*, a "documentary-style reality TV show" centered around his life. (Id. at 2-3.) Piuggi pitched the show to Grand Street, a production company, but Grand Street was not interested. (See id. at 3.) A week later, HBO released a trailer for *Fake Famous*, a new reality TV show. (See id.) Shortly thereafter, Piuggi learned of the production of another new HBO show, *FBoy Island*. (See id. at 4-5.) Believing that Grand Street and HBO had stolen his concept for *Instafamous* and copied it for *Fake Famous* and *FBOY Island*, Piuggi brought this action on May 2, 2023, alleging claims for copyright infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (See Dkt. No. 8.)

2

On July 2, 2024, following briefing by the parties, the Court granted Defendants' motions to dismiss and granted Piuggi leave to amend his complaint. (See Dkt. No. 51.) As to Piuggi's Copyright Act claim, the Court found that Piuggi had failed to plausibly allege both that the Defendants had actually copied his work and that *Instafamous* was substantially similar to either *Fake Famous* or *FBOY Island*. (See id.) On August 3, 2024, Piuggi filed an amended complaint. (See FAC.) In that complaint, Piuggi alleged one claim of copyright infringement against both Defendants and one claim of breach of contract against Grand Street. (See id. ¶¶ 114-24.) Defendants again moved to dismiss Piuggi's complaint. (See Dkt. Nos. 60-61.) On February 24, 2025, the Court granted Defendants' second motion to dismiss, finding that the allegations in the Amended Complaint again failed to plausibly allege substantial similarity or actual copying. (See Dkt. No. 71.)

On March 10, 2025, Grand Street timely moved for an award of attorneys' fees pursuant to Section 505 and sanctions under Rule 11. (See Dkt. No. 73.) On that same day, WBD also timely moved for an award of attorneys' fees and cost pursuant to Section 505. (See Dkt. No. 76.) Both defendants filed memoranda of law as well as declarations and detailed billing records in support of their motions. (See Dkt. Nos. 74-75,

77-81.) On March 19, 2025, Piuggi filed an affirmation and a declaration by his then-attorney, Robert J. Hantman, opposing Defendants' motions, which the Court construed as an opposition to the motions. (See Dkt. Nos. 83-85.) On March 27, 2025, Defendants filed reply memoranda of law and supplemental declarations in support of their motions.[2] (See Dkt. Nos. 87-91.)

On January 15, 2026, the Court referred the parties to mediation to facilitate resolution of the present motions. (See Dkt. No. 96.) Mediation was held on June 17, 2026, but the parties were unable to resolve any of the issues in this case. (See Dkt. No. 115.)

## II.  <u>LEGAL STANDARD</u>

A district court may award reasonable attorneys' fees as costs to a prevailing party in a copyright infringement action. See 17 U.S.C. § 505. "An award of attorney's fees in a copyright action is not automatic to the prevailing party, but rather a matter of the court's discretion." <u>Minden Pictures, Inc. v. Sup China, Inc.</u>, No. 23-CV-10312, 2024 WL 4932711, at *8 (S.D.N.Y. Oct. 4, 2024) (citation omitted);

---

[2] Piuggi subsequently filed an additional declaration of his attorney on May 1, 2025, to which Defendants objected. (See Dkt. Nos. 92-94.) Because that filing was both untimely and made contrary to this Court's Individual Practice II.D.1, the Court will not consider it. The Court will also not consider the improper sur-reply filed by Mr. Hantman without leave of court. (See Dkt. No. 111.)

Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994) ("[A]ttorney's fees [under Section 505] are to be awarded to prevailing parties only as a matter of the court's discretion.").

If an award of attorneys' fees is appropriate, the court must determine whether the requested fees are reasonable. See O'Neill v. Flawless Kitty LLC, No. 23-CV-5611, 2024 WL 1542915, at *3 (S.D.N.Y. Apr. 10, 2024). A "presumptively reasonable fee" is "the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter." Cawthon v. Nguyen, No. 22-CV-7398, 2024 WL 1557301, at *9 (S.D.N.Y. Jan. 23, 2024) (citation omitted). To determine whether an hourly rate is reasonable, the court may look to the prevailing market rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citation omitted).

Ultimately, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The prevailing party must "submit records that enable the [c]ourt to determine whether the fee sought is reasonable," Romanowicz v. Alister & Paine, Inc., No. 17-CV-8937, 2018 WL 4762980, at *6

5

(S.D.N.Y. Aug. 3, 2018), including detailed "contemporaneous time records" documenting "the date, the hours expended, and the nature of the work done" by each attorney, Euro Pac. Cap., Inc. v. Bohai Pharms. Grp., Inc., No. 15-CV-4410, 2018 WL 1229842, at *10 (S.D.N.Y. Mar. 9, 2018) (citation omitted). However, "[b]ecause it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." Brunswick Recs. Corp. v. Lastrada Ent. Co., No. 23-CV-100, 2023 WL 8703705, at *6 (S.D.N.Y. Dec. 15, 2023) (citations omitted).

### III. DISCUSSION

A.    ATTORNEYS' FEES AND COSTS UNDER 17 U.S.C. § 505

Having succeeded on their motion to dismiss Piuggi's copyright claim, Defendants are the "prevailing party" in this action and thus meet the threshold requirement for an award of attorneys' fees and costs. 17 U.S.C. § 505. However, a party is not entitled to an award of fees merely because they prevailed on a motion to dismiss. See Silberstein v. Fox Ent. Grp., Inc., 536 F. Supp. 2d 440, 443 (S.D.N.Y. 2008). Attorneys' fees should be awarded only if doing so is "faithful to the purposes of the Copyright Act." Matthew Bender & Co. v. W. Pub. Co., 240 F.3d 116, 122 (2d Cir. 2001)

6

(citation omitted). The "principal purpose" of the Copyright Act is "to encourage the origination of creative works by attaching enforceable property rights to them." <u>Davis v. Blige</u>, 505 F.3d 90, 105 (2d Cir. 2007) (citation omitted). "This objective is promoted by discouraging infringement as well as by the successful defense of copyright infringement actions." <u>Earth Flag Ltd. v. Alamo Flag Co.</u>, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001).

> 1. <u>An Award of Attorneys' Fees and Costs Is Appropriate</u>

To determine whether a fee award is appropriate, the court must conduct a "particularized, case-by-case assessment" that "treat[s] prevailing plaintiffs and prevailing defendants" the same. <u>Poppington, LLC v. Brooks</u>, No. 23-660, 2024 WL 1266983, at *1 (2d Cir. Mar. 26, 2024) (citation omitted). The court must weigh several considerations, including "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Kirtsaeng v. John Wiley & Sons, Inc.</u>, 579 U.S. 197, 202 (2016) (quoting <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 n.19 (1994)). Although not dispositive, whether a plaintiff's claim was objectively unreasonable should be

accorded "substantial weight." <u>Bryant v. Media Right Prods.,</u> <u>Inc.</u>, 603 F.3d 135, 144 (2d Cir. 2010).

Courts in this District have found copyright infringement claims to be objectively unreasonable where the alleged similarities between the plaintiff's work and the defendant's work concern almost exclusively unprotectable elements and the "total concept and feel" of the works are markedly different. <u>See</u>, <u>e.g.</u>, <u>Porto v. Guirgis</u>, 659 F. Supp. 2d 597, 617–18 (S.D.N.Y. 2009); <u>Mallery v. NBC Universal,</u> <u>Inc.</u>, No. 07-CV-2250, 2008 WL 719218, at *1 (S.D.N.Y. Mar. 18, 2008), <u>aff'd</u>, 331 F. App'x 821 (2d Cir. 2009). For example, the court in <u>Mallery</u> awarded attorneys' fees where "nearly every instance of alleged similarity between [the defendant's work] and the plaintiffs' work relate[d] to unprotectable ideas rather than protectable expression" and the "total concept and feel" of the works were "profoundly different." <u>Mallery</u>, 2008 WL 719218, at *1 (internal quotation marks omitted).

The court's analysis in <u>Mallery</u> is instructive here. As this Court explained in its Decision and Order granting Defendants' motion to dismiss Piuggi's initial complaint, "none of the elements Defendants allegedly incorporated from *Instafamous* . . . are protected by copyright." (Dkt. No. 51 at 36.) Piuggi's amendments to his complaint following that

Decision and Order failed to identify additional protectable elements of his work that Defendants copied. As this Court explained in dismissing Piuggi's FAC, the similarities Piuggi alleged were "largely stock concepts" that are "common to reality dating shows and are unprotectable in and of themselves." (Dkt. No. 71 at 28.) Additionally, the "total concept and feel" of *Instafamous* and Defendants' works were "vastly different." (Dkt. No. 71 at 26 (quoting Lewinson v. Henry Holt & Co., LLC, 659 F. Supp. 2d 547, 565 (S.D.N.Y. 2009)).) Those findings demonstrate that Piuggi's allegations of substantial similarity, a necessary element of his copyright claim, were "clearly without merit" and "devoid of . . . factual basis." Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No. 96-CV-4126, 2004 WL 728878, at *3 (S.D.N.Y. April 6, 2004). Given the unprotectable nature of Piuggi's alleged similarities and the patent dissimilarity between *Instafamous* and both *FBoy Island* and *Fake Famous*, Piuggi's copyright infringement claim was objectively unreasonable. See Mallery, 2008 WL 719218, at *1-2.

Additionally, Piuggi's allegations of actual copying were entirely without merit. According to his allegations, Piuggi shared his ideas for *Instafamous* with Grand Street and GFY. (See Dkt. No. 51 at 20.) But it was HBO that created and

9

produced *Fake Famous* and *FBOY Island*, shows with which neither Grand Street nor GFY had any connection. (See id.) As the Court stated in its first Decision and Order dismissing Piuggi's complaint, the allegations attempting to establish HBO's access to *Instafamous* were "either wholly implausible or amount[ed] to little more than speculation and conjecture." (See id. at 23.) Despite that finding and the Court's decision to grant Piuggi leave to amend, Piuggi relied on the same baseless allegations of access in his FAC as in his initial complaint. (See Dkt. No. 71 at 21.) Piuggi's repeated failure to provide any factual allegations to support his theory that Defendants conspired to steal his work reveals the lack of a reasonable basis in fact for his claim. His pursuit of his claim despite the lack of facts to support it is especially unreasonable given that Defendants put Piuggi on notice as early as May 24, 2023, as to the factual implausibility of his claim. (See Dkt. No. 75-1.)

Defendants argue that, in addition to being objectively unreasonable, Piuggi's copyright claim was improperly brought to "attract publicity and achiev[e] associated financial gain." (Dkt. No. 77 at 13.) Although not dispositive, "the presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees." Baker v. Urban Outfitters, Inc., 431 F. Supp. 2d

351, 357 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007).

Courts in this District have found an improper motive where a copyright plaintiff's actions demonstrate an intent to "sensationalize the litigation to elevate her own public profile and achieve a secondary financial gain." Hughes v. Benjamin, No. 17-CV-6493, 2020 WL 4500181, at *4 (S.D.N.Y. Aug. 5, 2020) (finding that a plaintiff was improperly motivated where she used social media to engage in "public belittlement and celebrity-style feuding" with the defendant); see also Baker, 431 F. Supp. 2d at 358–59 (imposing fees and costs where the plaintiff brought his claim "in an attempt to garner publicity for [the plaintiff's] agent and for his lawyer").

Evidence submitted by Defendants suggests that Piuggi maintained this action at least in part to garner publicity for himself and profit from that publicity. Throughout the course of this action, Piuggi promoted himself on social media and a personal website as crusading against large media companies he said had stolen his idea. (See Dkt. Nos. 78-1, 78-2, 78-3.) Piuggi attempted to leverage that publicity into financial gain by soliciting donations and selling merchandise emblazoned "I Sued HBO for Stealing." (Dkt. No. 78-3.) That evidence does not necessarily establish that

11

Piuggi lacked any subjective belief in the merit of his claim. However, it supports a finding that in maintaining his copyright action, Piuggi was "gambl[ing] on an unreasonable legal theory in order to achieve a secondary gain" — in this case fame and related financial gain. Torah Soft Ltd. v. Drosnin, No. 00-CV-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001). Consideration of Piuggi's motivation therefore weighs in favor of Defendants.

Considerations of compensation and deterrence similarly support a fee award here. "[T]he need for deterrence against objectively unreasonable copyright claims is significant." Chivalry Film Prods. v. NBC Universal, Inc., 05-CV-5627, 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007). Failure to award attorneys' fees to a defendant in case like this "invite[s] others to bring similarly unreasonable actions without fear of any consequences." Earth Flag Ltd., 154 F. Supp. 2d at 668. There is no fear that an award of fees here will chill litigants from bringing "novel or close" claims that serve to "clarif[y] the boundaries of copyright law." Id. at 666. Piuggi's claims were straightforward and clearly without merit. As this Court opined in granting Defendants' first motion to dismiss, other courts in this district have "routinely dismissed copyright claims where plaintiffs allege

a greater degree of similarity than Piuggi allege[d] here." (Dkt. No. 51 at 38–39 (collecting cases).)

Accordingly, an award of attorneys' fees and costs to Defendants is warranted here as consistent with the purposes of the Copyright Act.

2.    Amount of Fees and Costs To Be Awarded

Having determined that an award of attorneys' fees is warranted, the Court turns to determining a "reasonable" amount in light of the hourly rates and number of hours requested by Defendants. 17 U.S.C. § 505.

a)    *Hourly Rates*

Courts in this Circuit apply the lodestar method for determining reasonable attorneys' fees, "which places emphasis on a comparison of the rates charged by the prevailing party's counsel with rates of lawyers of similar skill and experience in the community." Stevens v. Aeonian Press, Inc., No. 00-CV-6330, 2002 WL 31387224, at *4 (S.D.N.Y. Oct. 23, 2002). In this District, "[c]ourts awarding attorneys' fees in copyright cases have regularly found rates in the range of $400 to $750 an hour for partners to be reasonable." BMaddox Enters. LLC v. Oskouie, 17-CV-1889, 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) (collecting cases). As for associate rates, "courts in the Southern District have generally found hourly rates of $200 to $450 to be reasonable

13

in copyright cases." Latin Am. Music Co., Inc. v. Spanish Broad. System, Inc., 13-CV-1526, 2020 WL 2848232, at *7 (S.D.N.Y. June 1, 2020) (collecting cases). Courts in this District "have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases." Id.

Grand Street was represented in this action by attorneys from Shapiro Arato Bach LLP ("Shapiro Arato Bach"). (See "Arato Decl.", Dkt. No. 75 at ¶ 1.) Shapiro Arato Bach's hourly rates were $795 for partner Cynthia Arato, $470 to $490 for associate Jason Driscoll, and $210 to $250 for various paralegals. (See id. ¶ 8.) The Court finds that Shapiro Arato Bach's hourly rates, although slightly higher than the typical range of approved hourly rates in this District for copyright cases, are reasonable based on the level of seniority and experience of their attorneys. (See Arato Decl. ¶¶ 4-8.)

WBD was represented in this matter by attorneys from Sheppard, Mullin, Richter & Hampton, LLP ("Sheppard Mullin"). (See "Bost Decl.", Dkt. No. 78 at ¶ 1.) Sheppard Mullin's hourly rates were $715 for partners, $615 for special counsel Paul Bost, $480 for associates, and $245 for paralegals and other research and support staff. (See HBO Mem. at 16-17.) The Court finds these rates to be reasonable based on the

approved hourly rates for similar cases in this District and the seniority and experience of Sheppard Mullin's attorneys.

b)    *Number of Hours Expended*

Shapiro Arato Bach billed 71.8 hours in defending against Piuggi's claims and in connection with its motion for attorneys' fees. (See Dkt. No. 75-5.) Grand Street therefore seeks to recover $29,761.47 in fees relating to defending against Piuggi's copyright claim, a number which includes certain discounted fees and from which Grand Street has excluded fees incurred in defending against Piuggi's contract claim, and $7,000 in fees relating to the present motion. (See Arato Decl.; Dkt. No. 90.)

Shapiro Arato Bach's claimed hours and requested fees are generally reasonable. The contemporaneous billing records submitted by Shapiro Arato Bach document "the date, the hours expended, and the nature of the work done" by each attorney with sufficient specificity. (See Dkt. No. 75-5); 1199/SEIU United Healthcare Workers East v. South Bronx Mental Health Council Inc., No. 13-CV-2608, 2014 WL 840965, *10 (S.D.N.Y. Mar. 4, 2014) (quoting N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). Shapiro Arato Bach appropriately excluded from its calculation of fees time spent responding to Piuggi's breach of contract claim in drafting its pre-motion letters, which Shapiro Arato Bach

15

assessed as fifteen percent of the total time billed for those letters. (See Arato Decl. ¶ 27; Dkt. Nos. 22, 61.) However, Shapiro Arato Bach failed to discount time spent on the contract claim in preparing its memorandum of law in support of Defendants' first motion to dismiss. (See Dkt. No. 32.) Accordingly, the Court will reduce Grand Street's requested fee award by $1,906.13, which represents fifteen percent of the time billed in preparing that memorandum, resulting in fees of $27,855.60 incurred in defending against Piuggi's copyright claim.

Additionally, the Court finds that Grand Street's request for $7,000 in fees incurred in bringing its motion for attorneys' fees is unreasonable. The fee motion is straightforward and does not grapple with complex issues of law or fact. Furthermore, Grand Street's motion for fees relied in large part on the analysis of WBD HBO's attorneys' fees motion. (See Grand Street Mem. at 1-2.) Although there is no standard percentage for fees-on-fees awards, "courts within this Circuit have awarded fee application awards in the range of [eight] to [twenty-four] percent of the total time claimed." Davis v. City of New Rochelle, 156 F.R.D. 549, 561 (S.D.N.Y. 1994); see also Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 525 (S.D.N.Y. 2002) (awarding ten percent of total attorneys' fees awarded for

16

fee application); <u>Nwosuocha v. Glover</u>, No. 21-CV-4047, 2025 WL 560846, at *10 (S.D.N.Y. Feb. 20, 2025) (same), <u>aff'd</u>, No. 25-647, 2026 WL 468746 (2d Cir. Feb. 19, 2026). Accordingly, the Court will award ten percent of the total attorneys' fees awarded to Grand Street in relation to the underlying litigation as fees in relation to its motion for attorneys' fees. Thus, Grand Street will be awarded an additional $2,785.56.

WBD seeks a total award of $119,157.30 in attorneys' fees. Sheppard Mullin billed a total of 209.5 hours in defending against Piuggi's copyright claim and in support of its motion for attorneys' fees. Sheppard Mullin has submitted contemporaneous billing records documenting the hours expended and work performed by each attorney. (<u>See</u> Dkt. No. 78-4.) However, there are numerous billing entries, such as "Confer with Jill Pietrini" and "Correspond with counsel for Grand Street Media," that are overly vague. (<u>E.g.</u>, <u>id.</u> at 54, 66); <u>see</u> <u>Miroglio S.P.A. v. Conway Stores, Inc.</u>, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (descriptions such as "letter to Dweck," "telephone call to Dweck," and "discussion with Dweck" were overly vague); <u>Spalluto v. Trump Int'l Hotel & Tower</u>, No. 04-CV-7497, 2008 WL 4525372, at *8 (S.D.N.Y. Oct. 2, 2008) (holding that "cursory descriptions," such as

"prepare correspondence to co-counsel," and "prepare letter to court" are overly vague and collecting cases).

Additionally, time records and affidavits submitted in support of WBD and HBO's motion indicate that Sheppard Mullin billed 69.7 hours and $34,348.50 related to the present motion for attorneys' fees. The Supreme Court has instructed that a "request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. Given the straightforward nature of WBD and HBO's motion, the Court finds that such an expenditure of time, which represents roughly a third of all hours billed by Sheppard Mullin in this matter, is not reasonable. Additionally, of the hours billed in support of the motion for attorneys' fees, 12.9 hours amounting to $8,233.50 in fees were not supported by the submission of time records. (See Dkt. No. 88.) To account for the overall billing deficiencies as well as the unreasonable number of hours spent in support of the motion for attorneys' fees and the fact that a portion of that time is not supported by billing records, the Court will reduce the fee award by thirty percent.

Additionally, in determining reasonable attorneys' fees under Section 505, a district court may consider the "relative financial positions of the parties." Nwosuocha, 2025 WL 560846, at *8. In an affidavit submitted in opposition to

18

Defendants' motions Piuggi attests that an award of attorneys' fees would be "financially ruinous and impossible for [him] to satisfy" as he has been without income since 2021. (Dkt. No. 84 ¶ 9.) Although, as Defendants point out, Piuggi does not support his attestation of financial hardship with bank or tax records, the financial disparity between Piuggi and WBD is clear. The Court may take judicial notice of public filings, which demonstrate that WBD is a financially successful media conglomerate. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); Charles v. Seinfeld, No. 18-CV-1196, 2022 WL 889162, at *9 (S.D.N.Y. Mar. 25, 2022) (considering public securities filings in concluding that "the difference in the parties' financial resources is vast"). Given the parties' relative financial position, the Court finds that an additional ten-percent reduction of WBD's fees is warranted. The resulting fee award of $75,069.10 will adequately serve the goals of deterrence and compensation.

Lastly, WBD seeks $574.31 in costs. An award of costs to the prevailing party is within the Court's discretion under Section 505. "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" Brunswick Recs. Corp. v. Lastrada Ent. Co., No. 23-CV-100, 2023 WL 8703705, at *7 (S.D.N.Y. Dec. 15, 2023) (quoting

Fisher v. SD Prot. Inc., 948 F.3d 593, 600 (2d Cir. 2020)).

A party "seeking to recover cost[s] is required to submit

bills or receipts of claimed expenses." Tabak v. Lifedaily,

LLC, No. 21-CV-4291, 2021 WL 5235203, at *6 (S.D.N.Y. Nov. 9,

2021).

A review of the billing records submitted in support of

WBD's request for costs reveals that $69.30 of the claimed

costs were incurred for electronic research. The Court will

not award costs for electronic research fees, which are

generally "already accounted in the attorneys' hourly rates

and research time." Seinfeld, 2022 WL 889162, at *8. The

remaining claimed costs are compensable and supported by

billing records. Accordingly, the Court will award costs to

WBD in the amount of $505.01.

B.    SANCTIONS UNDER RULE 11

In addition to seeking an award of attorneys' fees

pursuant to Section 505, Grand Street requests that the Court

impose sanctions on Piuggi and his counsel pursuant to Rule

11 of the Federal Rules of Civil Procedure.

Grand Street's motion for Rule 11 sanctions is

procedurally defective. "A motion for sanctions must be made

separately from any other motion." Fed. R. Civ. P. 11(c)(2).

Grand Street's request for sanctions is not made "separately

from any other motion," id., but is instead made as part of

20

their motion for attorneys' fees under Section 505. (See Dkt. No. 76; Dkt. No. 77.) That procedural failing requires that the motion for sanctions be denied. See Williamson v. Recovery Ltd., 542 F.3d 43, 51 (2d Cir. 2008) (affirming denial of motion for sanctions under Rule 11 where "Defendants failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule"); see also IMAPizza, LLC v. At Pizza Ltd., No. 17-CV-2327, 2021 WL 2410713 (D.D.C. June 8, 2021) (recommending denial of motion for sanctions under Rule 11 where request for sanctions was made as part of motion for attorneys' fees under Section 505), report and recommendation adopted, 2021 WL 3168132 (D.D.C. July 27, 2021); Nutrivita Lab'ys, Inc. v. VBS Distribution Inc., 160 F. Supp. 3d 1184 (C.D. Cal. 2016) (same), aff'd, 697 F. App'x 559 (9th Cir. 2017). Accordingly, Grand Street's motion for sanctions is denied.

## IV.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion for attorneys' fees and sanctions of defendant Grand Street Media Holdings Inc. ("Grand Street") (Dkt. No. 73) is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that the motion for attorneys' fees and costs of Warner Bros. Discovery, Inc. and Home Box Office Inc. (collectively, "WBD") (Dkt. No. 76) is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Grand Street, represented by Shapiro Arato Bach LLP, shall be awarded $30,641.16 in fees; it is further

**ORDERED** that WBD, represented by Sheppard, Mullin, Richter & Hampton, LLP, shall be awarded $75,069.10 in fees and $505.10 in costs.

The clerk of court is respectfully directed to terminate the motions pending at Docket Numbers 73 and 76.

**SO ORDERED.**

Dated:    20 July 2026
          New York, New York

_____
          Victor Marrero
          U.S.D.J.